# EXHIBITS C-1

EXHIBIT-H

Prepared by: AYESHA FRANKLIN

(5262 -242)

**Multistate**

# NOTE

FHA Case No.
SC4614373516703

LOAN #: 202985786

MARCH 30, 2009
[Date]

144 PAVILION STREET, SUMMERVILLE, SC 29483-8444
[Property Address]

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means COUNTRYWIDE BANK, FSB
and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED SIXTY ONE THOUSAND THREE HUNDRED EIGHTY FIVE and 00/100

Dollars (U.S. $161,385.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR & ONE-HALF          percent ( 4.500 %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on MAY 01, 2009          . Any principal and interest remaining on the first day of APRIL, 2039          , will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $817.71          . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge     ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY
(A) Late Charge for Overdue Payments
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR          percent ( 4.000 %) of the overdue amount of each payment .

(B) Default
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of

FHA Fixed Rate Note
2001R-XX (03/08)(d/l)

Page 1 of 2

FHA Multistate Fixed Rate Note - 10/95





610  202985786  N  001  001

**EXHIBIT-H**

CASE #: SC461437351:6703                                          LOAN #: 202985786

payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

   (C) Payment of Costs and Expenses

     If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**

     Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**

     Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

     Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

     If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _Michele Sjolander_
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Nelson L. Bruce_ _____ (Seal)
NELSON L. BRUCE                                    -Borrower

_____ (Seal)
                                                   -Borrower

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _Laurie Meder_
LAURIE MEDER
SENIOR VICE PRESIDENT

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

Prepared by: ANESHA FRANKLIN

EXHIBIT-H

Multistate

**NOTE**

FHA Case No.
8C4614373516703 .

LOAN #: 202985786

MARCH 30, 2009
[Date]

144 PAVILION STREET, SUMMERVILLE, SC 29493-8444
[Property Address]

**1.  PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means COUNTRYWIDE BANK, FSB
and its successors and assigns.

**2.  BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED SIXTY ONE THOUSAND THREE HUNDRED EIGHTY FIVE and 00/100

Dollars (U.S. $161,385.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR & ONE-HALF          percent (   4.500 %) per year until the full amount of principal has been paid.

**3.  PROMISE TO PAY SECURED** ·

Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.  MANNER OF PAYMENT**

(A)  Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
MAY 01, 2009          . Any principal and interest remaining on the first day of APRIL, 2039          , will be due on that date, which is called the "Maturity Date."

(B)  Place
Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.

(C)  Amount
Each monthly payment of principal and interest will be in the amount of U.S. $817.71          . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D)  Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [specify]

**5.  BORROWER'S RIGHT TO PREPAY** ·

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.  BORROWER'S FAILURE TO PAY**

(A)  Late Charge for Overdue Payments
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR          percent (   4.000 %) of the overdue amount of each payment .

(B)  Default
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of

FHA Fixed Rate Note
E001R-XX (02/08)(d4)

Page 1 of 2

FHA Multistate Fixed Rate Note - 10/95





CASE #: 8C4614373516703                                                LOAN #: 202302700    EXHIBIT - H

payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

*Nelson L. Bruce* _____ (Seal)
NELSON L. BRUCE                                -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

FHA Fixed Rate Note
2001R-XX (02/06)                          Page 2 of 2                    FHA Multistate Fixed Rate Note - 10/95

Prepared by: ANISHA FRANKLIN

IT IS HEREBY CERTIFIED THAT
THIS DOCUMENT IS A TRUE AND
CORRECT COPY OF THE ORIGINAL
COUNTRYWIDE BANK, FSB

BY:

EXHIBIT H

**Multistate**

**LOAN #: 202985786**

## NOTE

FHA Case No.
8C461437351.6703

MARCH 30, 2009
[Date]

144 PAVILION STREET, SUMMERVILLE, SC 29483-8444
[Property Address]

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
COUNTRYWIDE BANK, FSB
and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED SIXTY ONE THOUSAND THREE HUNDRED EIGHTY FIVE and 00/100

Dollars (U.S. $161,385.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date
of disbursement of the loan proceeds by Lender, at the rate of FOUR & ONE-HALF                  percent (   4.500 %) per
year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as
this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
MAY 01, 2009       . Any principal and interest remaining on the first day of APRIL, 2039       , will be due on that
date, which is called the "Maturity Date."
(B) Place
Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $817.71             . This amount will be
part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the
order described in the Security Instrument.
(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this
Note. [Check applicable box]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge       ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of
any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the
remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial
prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those
changes.

### 6. BORROWER'S FAILURE TO PAY
(A) Late Charge for Overdue Payments
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C)
of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the
amount of FOUR                    percent (   4.000 %) of the overdue amount of each payment .

(B) Default
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of
the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all
accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In
many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of

FHA Fixed Rate Note
2001R-XX (02/08)(d/i)

Page 1 of 2

FHA Multistate Fixed Rate Note- 10/95





CASE #: SC4614373516703                                                              LOAN #: 603985786

EXHIBIT H

payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C)  Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Nelson L. Bruce_ _____ (Seal)
NELSON L. BRUCE                    -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

# EXHIBITS C-2

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"

This law does not apply
OMB NO. 0575-0137

This is a continuing attempt to validate a debt under the Federal Debt Collection Practices
Act, and the Fair Debt Reporting Act, I the Director/Executor/Beneficiary/Grantor/Sole-
Shareholder, now exercise my lawful right to question the validity of this debt your agency
claims has come due.

From: Nelson Bruce the Director/Executor/Beneficiary/Grantor/Sole-Shareholder for

NELSON L BRUCE
144 Pavilion Street
Summerville, South Carolina 29483

Mailing Address for all correspondence: 1605 Central Ave. Ste. 6
Summerville, South Carolina 29483

To: BANK OF AMERICA, N.A.
Address: P.O. Box 942019
Simi Valley, CA 93094-2019

Re: Account Number: 202985786

Tracking# Provided on Receipt after Packaged

Current Principal Balance: $170,312.65

Date: 02/18/2016

Original Creditor: COUNTRYWIDE BANK FSB

Date: 03/30/09

Account History:

BANK OF AMERICA N.A.

| Equifax | TransUnion | Experian |
|---|---|---|
| BANK OF AMERICA | BANK OF AMERICA | BK OF AMER |
| Account Type:   Mortgage | Account Type:   Mortgage | Account Type: Mortgage |
| Account Number: 20298xxxx | Account Number: 20298xxxx | Account Number: 20298xxxx |
| Payment Responsibility: Individual | Payment Responsibility: Individual | Payment Responsibility: Individual |
| Date Opened: 03/2009 | Date Opened: 03/2009 | Date Opened: 03/2009 |
| Balance Date: 12/2015 | Balance Date: 09/2015 | Balance Date: 09/2015 |
| Balance Amount: $170,312.65 | Balance Amount: $170,312.65 | Balance Amount: $170,312.65 |
| Monthly Payment: $1,081 | Monthly Payment: $1,081 | Monthly Payment: $1,081 |
| High/Limit: $161,385 | High/Limit: $161,385 | High/Limit: $161,385 |
| Account Status: Pays 30 -59 Days | Account Status: Late 30 Days | Account Status: Late 30 Days/closed |
| Past Due Amount: $1,081 | Past Due Amount: $1,081 | Past Due Amount: $1,081 |

Page 1 of 14

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"    This law does not apply
OMB NO. 0575-0137

| | | |
|---|---|---|
| Comments: LAST REPORTED DELINQUENCIES: 02/2013=M5, 01/2013=M5,12/2012=M5 REAL ESTATE MORTGAGE | Comments: LAST REPORTED 01/2013=M5,12/2012=M5,11 /2012=M5 | Comments: ACCOUNT WAS DELINQUENT 120 DAYS PAST DUE DATE/NOW 30 OR 60 DAYS PAST DUE DATE OPEN LAST REPORTED DELINQUENCIES: 02/2013=M6 LAST PAID: 07/2015 |
| BANK OF AMERICA 4909 Savarese Cir Fl 1 908 01 47 Tampa, FL-336342413 (800) 669-6607 | BANK OF AMERICA 4909 Savarese Cir Fl 1 908 01 47 Tampa, FL-336342413 (800) 669-6607 | BK OF AMER 4909 Savarese Cir Tampa, FL-33634 (800) 669-6607 |
| 24-Month Payment History | 24-Month Payment History | 24-Month Payment History |
| No 24-Month Payment Data available for display. | Aug Jul Jun May Apr Mar Feb Jan 15  15 15  15  15  15  15  15 Dec Nov Oct Sep Aug Jul Jun May 14  14  14  14 14   14 14 14 Apr Feb Jan Dec Nov Oct Sep 14  14   14  13   13 13  13 | Sep Aug Jul Jun May Apr Mar Feb 15  15 15  15  15  15  15  15 Jan Dec Nov Oct Sep Aug Jul Jun 15  14   14  14  14 14   14 14 May Apr Feb Jan Dec Nov Oct 14  14   14  14   13 13  13 |
| Seven-Year Payment History 30 Days Past Due: 3 60 Days Past Due: 1 90 Days Past Due: 24 | Seven-Year Payment History 30 Days Past Due: 0 60 Days Past Due: 0 90 Days Past Due: 17 | Seven-Year Payment History 30 Days Past Due: 4 60 Days Past Due: 1 90 Days Past Due: 24 |

**To: Brian T. Moynihan (CEO)**

This letter is being sent to you in response to a report viewed by Nelson Bruce the Director/Executor/Beneficiary/Grantor/Sole-Shareholder of the accounts for NELSON L BRUCE, (on or about March 30, 2009, and the information obtained states that your company is reporting this debt). This is also a response to any and all your previous correspondence recently received up until the date of this mailing. This is also a FOIA (Freedom of Information Act) request.

### NOTICE:

I have included in this mailing an affidavit of notice of nonresponse for my 2 notices of default which request information from you which is needed to validate the alleged account above, the first notice of default sent on  08/18/2015 under certified mail number 7004 1160 0004 7704 3343 and the notice of default for the second set of documents sent on 9/15/2015 under certified mail number 7004 1160 0004 7704 3374 as of the date of this mailing you have still not provided me with all requested documents and by not providing me with the proper documents you have failed to validate this alleged debt for the above alleged account.  With your admission of sign proof that you accepted said documents above and with your notices stating you have received my documents you have willfully refused to validate this alleged debt and by doing so you have also refused my legal right to a response to said presentments up above, this is formal notice to your office that by you refusing my lawful request and threw your non-response and

Endorsement "Pay to the order of the United States of America, WITHOUT RECOURSE"

This law does not apply
OMB NO. 0575-0137

acquiescent, you have agree that the above is true. I have been requesting validation since July of 2015, since then you have failed to validate this alleged debt. You have sent me 2 different copies of copies of my "Note" of which you stated are true copies of the original and both are different. You have also admitted that you did not have the original document in your possession so how can either of these copies be copies of the original. There can only be one original "Note" and what you sent me is not a true copy of the original and has indorsements unknown to me which implies that this note has been sold to an unknown party. This is a breach of contract. The two different copies of copies of this instrument is now documented and in my records therefore I am also requesting a complete audit be done on my account from the public side and the private side. Be advised that this is not a refusal to pay, but a notice sent pursuant to NATIONAL BANK ACT, The Fair Credit Reporting Act, The Uniformed Commercial Code, US Code 18 U.S. §335. – Circulation of obligations of expired corporations as well as the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b) that your claim is being called into question and validation as well as lawful verification is demanded.

## Official Notice of Right to Rescind

Alleged Lender has not provided consumer with "a right to rescind notice" which is a TILA requirement and is now a violation, so this notice will also be my official written request to rescind this credit transaction. Also within this rescission request, I am requesting the lender to return all transactions that fall under TILA including the Original Instrument baring the my wet ink signature which will determine the validity and that you are the true holder in due course of the original document and have the right to any legal forcibility related to the alleged account.

## Notice of Dispute for the following regarding account number 202985786:

That your claim of a Principal balance $170,312.65 and Past Due amount of $7,571.90 which is showing on the last statement sent to me and received on 1-29-2016 which includes interest are all disputed and validation is requested). Included in this response this debt has been accepted for value and returned for value with the condition that this debt can be validated and this debt is considered to be invalid until I receive proper validation and your offices provide Claimant with proof of claim of the disputed debt. Your offices have 30 days to produce the required documentation in accordance with FDCPA guidelines. During this validation period and proof of claim, if any action is taken which could be considered detrimental to any of Claimant credit reports, said action will be considered a "dishonor" and cause the self-executing contract portion of this notice to be implemented. This includes any listing any information to a credit reporting repository that could be inaccurate or invalidated.

*Validation of debts [15 USC 1692g] provides that If the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification[1] or judgment, or name and address of the original creditor, is mailed to*

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"    This law does not apply
OMB NO. 0575-0137

*the consumer by the debt collector. (¹ VERIFICATION. Confirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition. Blacks Law Dictionary)*

This is a lawful request in accords with the aforementioned and the following:

## "NATIONAL BANK ACT"

SEC. 27. And be it further enacted, That it shall be unlawful for any officer acting under the provisions of this act to countersign or deliver to any association, or to any other company or person, any circulating notes contemplated by this act, except as herein before provided, and in accordance with the true intent and meaning of this act. And any officer who shall violate the provisions of this section shall be deemed guilty of a high misdemeanor, and on conviction thereof shall be punished by fine not exceeding double the amount so countersigned and delivered, and imprisonment not less than one year and not exceeding fifteen years, at the discretion of the court in which he shall be tried.

SEC. 28. And be it further enacted, That it shall be lawful for any such association to purchase, hold, and convey real estate as follows: —

First. Such as shall be necessary for its immediate accommodation in the transaction of its business.

Second. Such as shall be mortgaged to it in good faith by way of security for debts previously contracted.

Third. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

Fourth. Such as it shall purchase at sales under Judgements, decrees, or mortgages held by such association, or shall purchase to secure debts due to said association.

*Such associations shall not purchase or hold real estate in any other case or for any other purpose than as specified in this section. Nor shall it hold possession of any real estate under mortgage, or hold the title and possession of any real estate purchased to secure any debts due to it for a longer period than five years.*

SEC. 53. And be it further enacted, That if the directors of any association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this act, all the rights, privileges, and franchises of the association derived from this act shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper circuit, district, or territorial court of the United States, in a suit brought for that purpose by the comptroller of the currency, in his own name, before the association shall be declared dissolved. And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequences of such violation.

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"

This law does not apply
OMB NO. 0575-0137

National banking corporations are agencies or instruments of the general government, designed
to aid in the administration of a important branch of the public service, and are an appropriate
constitutional means to that end.  Pollard vs State, Ala 1880, 65 Ala 628

See, also, Tarrant vs. Bessemer Nat Bank 1913, 61 So 47,7 Ala App 285

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"          This law does not apply
                                                                                          OMB NO. 0575-0137

This letter is my formal written request for you to investigate the following unverified and invalidated account listed above: **According to the Fair Credit Reporting Act, Section 609 (a)(1)(A), your company is required by federal law to verify - through the physical verification of the original signed certified consumer contract - of any and all accounts you request to be posted and or reported on a credit report.**

I demand to see a copy of the Verifiable, Validated Proof (an original Consumer Contract with a wet-ink Signature on it, copies of copies are not Validation and by Law are not considered proof), that you have on file for the account listed above. Your failure to positively verify and validate this account continues to hurt and deprive the Director/Executor/Beneficiary/Grantor/Sole-Shareholder of the ability to obtain credit, and is depriving the Director/Executor/Beneficiary/Grantor /Sole-Shareholder, of lawful access to the credit-field of participation. Under the FCRA, unverified, invalid accounts must be removed. If you are unable to provide the Director/Executor/Beneficiary /Grantor/Sole-Share- holder with a copy of the verifiable/validated proof that you have on file within 30 calendar days from receipt of this notice, for each of the accounts listed above then you must at once remove these accounts from NELSON L BRUCE credit reports. Please provide the Director/Executor /Beneficiary/Grantor/Sole-Shareholder with a copy of an updated and corrected credit report[s] showing these items removed.

**I demand the aforegoing account be verified or removed immediately!**

Please be advised that you are required under the FCRA to have a copy of the original creditor's documentation on file to verify that this information belongs to the account of NELSON L BRUCE and is completely accurate. In the results of your first investigation, you stated in writing that you "verified" the account and that these items are being "reported correctly". Who in your company verified these accounts? How did they verify them? Why didn't you send the Director/Executor/Beneficiary/Grantor/Sole- Shareholder/Chief Executive Officer copies of the Verification, Validation like the Director/Executor/Beneficiary/Grantor/Sole-Shareholder/Chief Executive Officer asked you to?

As the Director/Executor/Beneficiary/Grantor/Sole-Shareholder/Chief Executive Officer I am sure that you are well aware, that law states that, Consumer Reporting Agencies, and those utilizing Consumer Reporting Agencies bear grave responsibilities to ensure the accuracy of the accounts they report on and that responsibility must consist of something more than merely parroting information received from other sources. That third party creditors are not holders in due course and not acknowledged under Law. The Courts have ordered that a "Reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations imposed by § 1681(a)(4).

You have NOT provided the Director/Executor/Beneficiary/Grantor/Sole-Share- holder/ Chief Executive Officer with a copy of ANY original documentation (not copy of copies) as required under Section 609 (a)(1)(A) & Section 611 (a)(1)(A) ( a consumer contract with the wet-ink signature on it ) and under Section 611 (5)(A) of the FCRA -- you are required to "…promptly (at once) DELETE all information which cannot be verified and or validated."'

Endorsement "Pay to the order of the United States of America, WITHOUT RECOURSE"

This law does not apply
OMB NO. 0576-0137

The law is very clear as to the Civil liability and the remedy avail- able to any Director/Executor/Beneficiary/Grantor/Sole-Shareholder for "negligent non- compliance" (Section 617) if you fail to comply with this Federal Law. Not that the Director/Executor/ Beneficiary/Grantor/Sole-Shareholder is a litigious consumer but that He fully intend on pursuing litigation in this matter to enforce the Director/Executor/Beneficiary /Grantor/Sole-Shareholder rights under the FCRA. As the Director/Executor/Beneficiary /Grantor/Sole-Shareholder I demand the following accounts be verified or deleted immediately.

In conjunction and in accordance with the FCRA in order to enforce the Director/Executor/Beneficiary/Grantor/Sole-Shareholder rights and seek relief as well as recover all monetary damages that the Director/Executor/Beneficiary/Grantor/ Sole-Shareholder may be entitled to under Section 616 and Section 617 regarding your continued willful negligent and noncompliance this document is being supplied to you.

Despite all prior written requests, the unverified/un-validated items listed above still remain on the Legal-Person's credit report in violation of Federal Law. You are required under the FCRA to have a copy of the original creditor's documentation on file to verify that this information is that of the Legal-Person and Name and is correct. In the past you stated in writing that you "verified" that these items are being "reported correctly". You have NOT provided the Director/Executor/Beneficiary/Grantor/ Sole-Shareholder with a copy of ANY original documentation (a consumer contract with wet-ink signature on it) as required under Section 609 (a)(1)(A) & Section 611 (a)(1) (A). Furthermore you have failed to provide the method of verification as required under Section 611 (a) (7).  Please be advised that under Section 611 (5)(A) of the FCRA –
you are required to "…promptly DELETE all information which cannot be verified."

I demand that you send the Director/Executor/Beneficiary/Grantor/Sole-Shareholder copies of the documents you used to verify the following accounts listed above or that you delete them immediately. Please provide the Director/Executor/Beneficiary/ Grantor/Sole-Shareholder with a copy of an updated and corrected report showing that these items have been deleted.



Your failure to provide me with verifiable proof which was required to post the accounts listed above proves that it does not exist and therefore is "Unverified". As Director/Executor/Beneficiary/Grantor/Sole-Shareholder I intend to pursue litigation in accordance with the FCRA to seek relief and recover all monetary damages that I the Director/Executor/Beneficiary/Grantor/Sole-Shareholder may be entitled to under Section 616 and Section 617 if the UNVERIFIED items listed above are not deleted within 30 day and or Validation provided. (Note that any delay tactics, stalling, unrelated, and or convoluted responses will not stay the 30 day requirement).   A copy of this letter as well as copies of the written letters sent to you previously has become part of a formal complaint to the Federal Trade

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"    This law does not apply
OMB NO. 0575-0137

Commission and shall be used as evidence in pending litigation provided you fail to comply with this offer of settlement.

You have NOT provided a copy of ANY original documentation (a consumer contract with wet-ink signature on it) as required under Section 609 (a)(1)(A) & Section 611 (a)(1)(A). Furthermore You must provide the method of verification/Validation as required under Section 611 (a) (7). Please be advised that under Section 611 (5)(A) of the FCRA – you are required to "...promptly DELETE all information which cannot be documented by valid verification.'"

In order to avoid legal action the Director/Executor/Beneficiary/Grantor/Sole-Shareholder again demands that you send copies of the documents you are using to verify accounts listed above or that you delete them immediately.

If the Director/Executor/Beneficiary/Grantor/Sole-Shareholder chooses to sue you, the FCRA allows actual damages and/or punitive damages up to $1,000 per occurrence for the credit willful noncompliance with the Act (Section 616) as well as for negligent noncompliance and the Director/Executor/Beneficiary/Grantor/Sole- Shareholder will be able to recover actual damages sustained by you (Section 617) and that attorney fees will be will also be assessed.

The Director/Executor/Beneficiary/Grantor/Sole-Shareholder Fee Schedule is as follows: $2,000.00 for each item under $1,000.00 and $15,000.00 for every item under $10,000.00. There will be a $45,000.00 assessment for every instance, and or noncompliance and nonresponse (a nonresponse is any response that is incomplete, evasive, convoluted, and or intended to distract) and or incident and or occurrence. If the issue involves an amount over $50,000.00 than an assessment of $200,000.00 for each issue and or instance, will be applied, this is the price of doing business with Director/Executor/Beneficiary /Grantor/Sole-Shareholder.

### 18 U.S. Code § 335 - Circulation of obligations of expired corporations

Whoever, being a director, officer, or agent of a corporation created by Act of Congress, the charter of which has expired, or trustee thereof, or an agent of such trustee, or a person having in his possession or under his control the property of such corporation for the purpose of paying or redeeming its notes and obligations, knowingly issues, reissues, or utters as money, or in any other way knowingly puts in circulation any bill, note, check, draft, or other security purporting to have been made by any such corporation, or by any officer thereof, or purporting to have been made under authority derived therefrom, shall be fined under this title or imprisoned not more than five years, or both.

According to the law, the penalty is 5yrs prison and/or $250,000 for violating the law as stated under U.S. Code 18 U.S. §335. – Circulation of obligations of expired corporations which is a crime which in this case pertains to the Mortgage assignment that you sent which was filed in Dorchester County South Carolina records and recorded September 16, 2011. Countrywide Bank FSB has been out of Business since 2009 and the individual who the document is stating signed as the assistant secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is an employee of BANK OF AMERICA, NOT COUNTRYWIDE BANK FSB or MERS. A criminal complaint will be filed with the United States Attorney for the State of South Carolina regarding this matter for further investigation if the CEO or CFO of BANK OF AMERICA doesn't contact Mr. Bruce in writing with a contact number so we can discuss how we can come to a conclusion and settle the current issue pertaining to this alleged account of which you will receive a notice once filed.

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"

This law does not apply
OMB NO. 0575-0137

On the surface this matter is very disturbing and discouraging.  By refusing to supply, you will be violating the law and my rights under UCC. Again this is NOT a request for "verification" or proof of my mailing address, but a request for VALIDATION made pursuant to the above named Title and Section (as well as other laws both federal and local). I respectfully request that your offices provide me with competent evidence that delivered and sign in affidavit form that I the Director/Executor/Beneficiary/Grantor/Sole- Shareholder have any legal obligation to pay you.

## Please provide me with the following:

- What the monies you say Mr. Bruce owes is for, invoice and complete accounting to include F.T.P. file;
- Explain and show how you calculated what you say Mr. Bruce owes;
- Provide us with the original signed instrument that shows Mr. Bruce agreed to pay what you say Mr. Bruce owes, no Photocopy of a Photocopy will be accepted if you chose to send it will be construed as non-compliance and fee assessments will apply;
- Provide a verification or copy of any judgment if applicable;
- Provide all documentation requested here and in the previous correspondences accompanied with a sworn affidavit from an agent of your company who has firsthand knowledge of any and all documents being sent to Mr. Bruce baring his wet ink signatures.  Any response that is not in affidavit form by an agent of your company who has firsthand knowledge that the documents that are being sent are true and accurate regarding the above alleged account for Mr. Bruce will not be acknowledged as a response and the issue at hand will not be validated or considered valid.
- An Agent of Bank of America needs to schedule a day and time within the 30 day period from receipt of this letter and provide a contact name and number to communicate and meet with Mr. Bruce (and his third party witness) in person for his inspection of the Original Note baring his wet ink signature.  This is yet another demand to go along with the previous 3 demands of which you have yet to honor to validate the alleged debt you say Mr. Bruce owes!  (Scheduling needs to be provided by certified mail at the address above to ensure timely receipt and tracking and shall not be scheduled within the last 5 days of the 30 day period requested herein.  Scheduling must be within 25 days from receipt of this notice, and a meet-up point with a day and time should be within the 30 day period but on a business day between business hours and should be scheduled in the state and county where Mr. Bruce resides.  Be informed that a minimum of 3 hours and a maximum of 5 hours will be needed for a thorough inspection of the instrument to determine its validity no later than 5 business days from the end of the 30 day period of this notice.
- Identify the original creditor's Legal name and process server information (required under UCC and FDCPA, FCRA);
- Prove the Statute of Limitations has not expired on this account
- Prove Mr. Bruce with proof you have a contract from the original creditor and new creditor and them giving you authority to service this alleged mortgage.
- Provide Mr. Bruce with the results of the audit on when this note was paid-off.
- Prove that you are licensed to collect in this State.
- Provide verification along with your license numbers and Registered Agent.

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"

This law does not apply
OMB NO. 0575-0137

*Note: You are requested to cease and desist from any further actions until this debt has been validated and any further actions is a continued willful violation of the state, federal laws, local and any and all laws pertaining to this situation.*

### 112 Statute at Large chapter 48 see also, 73rd CONGRESS, SESS. 1. CHAPTER 48, JUNE 5, 1933, JOINT RESOLUTION - [H.J. Res. 192] [Pub. Res., No. 10]

"To ensure uniform values to the coins and currencies of the United States. Whereas the holding of or dealing in gold affect the public interest, and are therefore subject to proper regulation and restriction; and

Whereas the existing emergency has disclosed that provisions of obligations which purport to give the obligee a right to require payment in gold or a particular kind of coin or currency of the United States, or in an amount of money of the United States measured thereby, obstruct the power of congress to regulate the value of the money of the United States, and are inconsistent with the declared policy of the Congress to maintain at all times the equal power of every dollar, coined or issued by the United States, in the markets and in the payment of debts. Now therefore be it Resolved by the Senate and House of Representatives of the United States of America in Congress Assembled, That (a) Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount of money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

(b) As used in the resolution, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term "coin or currency" means coins or currency of the United States including Federal Reserve Notes, and circulating notes of Federal Reserve banks and national banking associations.

Sec. 2. The last sentence of paragraph (1) of subsection (b) of section 45 of the Act entitled "An act to relieve the existing national economic emergency by increasing agricultural purchasing power, to raise revenue for extraordinary expenses incurred by reason of such emergency, to provide emergency relief with respect to agricultural indebtedness, to provide for the orderly liquidation of joint-stock land banks, and for other purposes",

At this time it is necessary to inform you that if your offices have reported invalidated information to or on any of the 3 major Credit Bureau's (Equifax, Experian or TransUnion) that action constitute fraud under Federal, UCC and State Laws. Due to this fact, if any negative mark is found on any of Mr. Jones's credit reports by your company or the company that you represent we will not hesitate in bringing legal action against you for the following:

- Violation of the Fair Credit Reporting Act
- Violation of the Fair Debt Collection Practices Act
- Defamation of Character

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"

This law does not apply
OMB NO. 0575-0137

If your offices are able to provide the proper documentation (originals and not copied unverified documents) as requested in this Declaration, we will require at least 30 days for review as to the validity of the information provided and during such time all collection activity must cease and desist.

Also during this validation period, if any action is taken which could be considered detrimental to any of Mr. Bruce credit reports, we will institute UCC/Common/human rights Lawsuit proceedings. This includes any listing any information to or by any credit reporting repository that could be inaccurate or invalidated or verifying an account as accurate when in fact there is no provided proof that it is.

If your offices fail to respond to this validation request within 30 days from the date of your receipt it will be considered a default as you will be in dishonor; at such point all references to this account must be deleted and completely removed from this credit file and a copy of such deletion request shall be sent to Mr. Bruce immediately.

We would also like to request, again in writing, that no telephone contact be made by your offices to Mr. Bruce home or to his place of employment. If your offices attempt telephone communication (including but not limited to E-Mail), with Mr. Bruce, including but not limited to misleading post cards and door knob postings by representatives or agents and third parties associated with you or hired by you requesting Mr. Bruce to call and verify occupancy, computer generated calls and operator assisted calls or correspondence sent to or by any third parties, it will be considered harassment and we will have no choice but to add such information to filed suit for compensation of these violations. All future communications with Mr. Bruce MUST be done in writing and sent to the address noted at top portion of this letter by USPS or other delivery services. This request does not void or reset the previous notice in writing requesting that no telephone contact be made to me which was sent on 10/15/2015 under certified mail number 7004 1160 0004 7704 3404.

It would be advisable that you assure that your records are in order before we are forced to demand discovery in legal action. This is an attempt to correct your records; any information obtained shall be used for that purpose. Although exhaustive the information contained in this document, it is necessary so as to show the Director/Executor/Beneficiary/ Grantor/Sole-Shareholder intentions of not being treated as of no-account. I the Director/Executor/Beneficiary/Grantor/Sole-Shareholder can assure you that although you may or may not receive similar documents, this is my situation and not to be compared to another. I the Director/Executor/Beneficiary/Grantor/ Sole-Shareholder do wish to thank you for your time.

The aforementioned is true and correct and submitted by the Director/Executor/Beneficiary/Grantor /Sole-Shareholder

Signed: _____ Director/Executor/Beneficiary/
Grantor/Sole-Shareholder UCC 1-308, 103, 415 Dated: 02/18/2016

Nelson Bruce Director/Executor/Beneficiary/Grantor/Sole-Shareholder any and all documents in this matter signed by the Director/Executor/Beneficiary/Grantor/Sole-Share- holder are done so under Reservation of rights UCC 1-308 and without recourse.

## Counter Claim with Self-executing Contract

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"   This law does not apply
OMB NO. 0575-0137

(a)   If Respondent, such as by commission, omission, and otherwise:

> (1) Fails to provide VALIDATION and PROOF OF CLAIM within thirty (30) days; [15 USC 1692g]
> (2) Makes a false representation of the character of the herein above-referenced alleged debt;[15 USC 1692e]
> (3) Makes a false representation of the legal status of the herein above-referenced alleged debt;[15 USC 1692e]
> (4) Provides or distributes any written communication which simulates a false impression as to its source, authorization, or approval in regard to validation of this debt [15 USC 1692e]
> (5) Reports or communicates information which is known or which should be known to be false[15 USC 1692e]
> (6) Makes any threat of action that cannot legally be taken, in violation of any applicable law, such as, the law codified at the Fair Debt Collection Practices Act,[15 USC 1692f]

(b)   Then it will be construed to be Respondent's tacit acceptance of the terms and condition stated herein. In which case Respondent agrees to:

> (1) Voluntarily report this account to all credit bureaus as "paid as agreed;" and,
> (2) Voluntarily waive all claims against Claimant, their Agent or Heirs with prejudice; and,
> (3) The matter regarding the alleged debt is finally and totally settled; and,
> (4) Voluntarily admits the Claimant is the depositor for this account, that Respondent risked none of their assets at any time regarding this account and that they failed to disclose these material facts to Claimant; and,
> (5) Voluntarily report the date of last activity on this account is the date of this notice.

(c) Furthermore, Respondent's failure to "Cease and Desist" in accordance with the requirements of the FDCPA and other related law, and/or satisfy the above "terms and conditions," constitutes Respondent's "Breach of Duty" and voluntary agreement to compensate Claimant, by certified mail, with a cashier's check within thirty (30) days of the date of billing by Claimant, their Agent or Heirs, in the following amounts:

> (1) One Thousand Dollars ($1,000.00) for each communication made to the Claimant or their Agent or Heirs, whether telephonically or in writing, which is not in affidavit form, by a person who has first-hand knowledge, regarding Respondent's unsubstantiated claim; and,
> (2) Fifty Thousand Dollars ($50,000.00) for each transaction initiated by Claimant where Claimant's commercial ability is impeded due to you, your agents' or assigns adverse credit reporting; and,
> (3) Five Thousand Dollars ($5,000.00) for each court appearance Claimant, their Agent or Heirs makes in response to Respondent's unsubstantiated claims; and,
> (4) RESPONDENT owes Claimant the balance equal to the purported credit limit on this account, plus interest and fees, for money lent; and,
> (5) Three times the alleged total claim amount of One-Hundred Seventy Thousand Three Hundred Twelve Dollar 65/100 ($170,312.65) which equals ($510,937.95); and,

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"

This law does not apply
OMB NO. 0575-0137

(6) Five Thousand Dollars ($5,000.00) per occurrence, for listing or reporting any information to a credit reporting repository which could be considered detrimental to Claimant's credit history; and,

(7) Debt Collector tacitly agrees that Debt Collector will compensate Respondent for all costs, fees and expenses incurred in defending against this and any and all continued collection attempts (by anyone) regarding the above-referenced alleged account.

(d)    Respondent also agrees to:

(1) Voluntarily authorize Claimant to record a UCC-1 on Respondent as debtor to secure the debt owed Claimant; and

(2) Voluntarily prove their claim as a Respondent in possession of Claimant property in a involuntary bankruptcy proceeding process; and,

(3) Voluntarily compensate Claimant for ALL costs and attorneys/consultant fees; and.

(4) Resolve ALL claims by Claimant, against Respondent, et al, exclusively and finally through binding arbitration, if necessary, to enforce the above terms, conditions, fees, penalties and damages. Arbitration replaces the right to go to court except to confirm an arbitration award. The arbitration organization that is selected will apply its code or procedure in effect at the time the arbitration is filed, subject to this agreement. The arbitration will be conducted before a single arbitrator. The arbitrator's authority is limited solely to the Claims between Claimant and Respondent alone. The arbitration will not be consolidated with any other arbitration proceeding. If Claimant prevails in the arbitration of any Claim against Respondent, Respondent will reimburse Claimant for any fees Claimant paid to the arbitration organization in connection with the arbitration. Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered in a court of competent jurisdiction. This arbitration provision applies to all Claims now in existence or that may arise in the future. The arbitration provision shall survive any voluntary payment of Claimant's claim against Respondent, in full, or any bankruptcy by Respondent.

This is a private communication and is intended to affect an out-of-court settlement of this matter. Conduct yourself accordingly.  Should any provision on this agreement be found to not be enforceable by order of a court of competent jurisdiction, it shall not adversely affect any other provision of this agreement and reasonable opportunity and effort shall be taken to modify it to become enforceable.

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"

This law does not apply
OMB NO. 0575-0137

## NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT
## NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL

### Applicable to all successors and assigns
### Silence Is Acquiescence/Agreement/Dishonor

Executed on this _____ day of February 18, 2016 by, _____

cc:

  1. FILE
  2. Equifax
  3. Trans Union
  4. Experian

South Carolina, State )            **For verification purposes only**
                      ) ss.
Dorchester County    )

    On this day of February_____, 2016, before me, the undersigned officer, personally appeared, ___Nelson Bruce___, satisfactorily proven to me to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same, for the purposes therein contained.

        In witness hereof I hereunto set my hand and official seal

_____
Notary Public

_____                                     SEAL
Address of Notary My Notary

Commission Expiration _____

AMANDA COLLINS
Notary Public
Berkeley County, SC
My Commission Expires 12 04 17

Endorsement "Pay to the order of the United States of America. WITHOUT RECOURSE"

## NOTARY'S CERTIFICATE OF SERVICE

It is hereby certified, that on the date noted below, the undersigned Notary Public packaged and sealed the following documents being mailed to:

BANK OF AMERICA N.A.
Attn: Brian T. Moynihan
PO Box 942019
Simi Valley, CA 93094-2019

hereinafter, "Recipient," the documents and papers pertaining to a certain Alleged Account No. 202985786 regarding NELSON L BRUCE as follows:

1. Affidavit of Notice of Non-response – (1 page)
2. Demand for Validation of Debt/Notice of Rescission Request/Notice of Dispute/Presentment – (14 pages)



10. Reference copy of this **Notary's Certificate of Service** (signed original on file) – **(1 page)**

by Certified Mail No. US Return Receipt attached by placing same in a postpaid envelope properly addressed to Recipient at the said address and depositing same at an official depository under the exclusive face and custody of the U.S. Postal Service within the State of South Carolina.

NOTARY PUBLIC
Void where prohibited by law

DATE

(Seal)

Address

My commission expires: _____ August 24, 2010

AMANDA COLLINS
Notary Public
Berkeley County, SC
My Commission Expires 12 04 17

(Stamp)

CUSTOMER USE ONLY

FROM: (PLEASE PRINT)    PHONE (     )

Nelson Bruce
1605 Central Ave., Ste 6
Summerville, SC 29483

PAYMENT BY ACCOUNT (IF APPLICABLE)
USPS® Corporate Acct. No.          Federal Agency Acct. No. or Postal Service™ Acct. No.

DELIVERY OPTIONS (Customer Use Only)

SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
   *Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE (     )

BANK OF AMERICA, N.A.
Attn: CEO Brian T. Moynihan
P.O. BOX 942019
Simi Valley, CA 93094-2019
ZIP + 4® (U.S. ADDRESSES ONLY)
9 3 0 9 4 - 2 0 1 9

☒ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
☒ $100.00 insurance included.

EL 270564667 US

**UNITED STATES**
**POSTAL SERVICE**®

**PRIORITY**
**★ MAIL ★**
**EXPRESS™**

FOR USPS USE ONLY
☒ 1-Day    ☐ 2-Day    ☐ Military    ☐ DPO

PO ZIP Code: 29483
Scheduled Delivery Date (MM/DD/YY): 02/19
Postage: $ 22.95

Date Accepted (MM/DD/YY): 02/18/16
Scheduled Delivery Time
☐ 10:30 AM  ☒ 3:00 PM
☐ 12 NOON
Insurance Fee: $    COD Fee: $

Time Accepted: 4.20  ☐ AM  ☒ PM
10:30 AM Delivery Fee: $
Return Receipt Fee: $    Live Animal Transportation Fee: $

Weight: ___ lbs. ___ ozs.
Flat Rate ☐
Sunday/Holiday Premium Fee: $
Total Postage & Fees: $ 22.95

Acceptance Employee Initials

DELIVERY (POSTAL SERVICE USE ONLY)

Delivery Attempt (MM/DD/YY)    Time  ☐ AM  ☐ PM    Employee Signature

Delivery Attempt (MM/DD/YY)    Time  ☐ AM  ☐ PM    Employee Signature

LABEL 11-B, SEPTEMBER 2015    PSN 7690-02-000-9996    1-ORIGIN POST OFFICE COPY



**UNITED STATES**
**POSTAL SERVICE.**

Date: February 19, 2016

Nelson Bruce:

The following is in response to your February 19, 2016 request for delivery information on your Priority Mail Express® item number EL270564667US. The delivery record shows that this item was delivered on February 19, 2016 at 10:57 am in SIMI VALLEY, CA 93065. The scanned image of the recipient information is provided below.

Signature of Recipient :     *J. Caceres*

Address of Recipient :     BOA

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service

# EXHIBITS C-3

Record/FILE ON DEMAND

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Nelson L. Bruce, Sui Juris<br><br>    Plaintiff(s),<br><br>v.<br><br>Bank of America, N.A., et al.,<br><br>    Defendants(s). | Case No. 2:19-cv-03456-BHH-KDW<br><br>UPDATED AFFIDAVIT, 1st SET OF DISCOVERY, AFFIDAVIT IN SUPPORT OF CLAIMS FOR SUMMARY JUDGEMENT |

### AFFIDAVIT, DISCOVERY
Dated this 10th day of October, 2020.

### INTRODUCTION

Notice to the Court is being given to all Attorneys involved and the Defendant(s), that the Plaintiff is attempting to discover a thorough claim to this case, and cannot respond to the Defendant(s) motions and demands and/or move the Court further until the true documentations from the Defendant(s) has been secured so that the Court can utilize all facts in this case to make a complete judgement in validity which also include a factual collection of Tax Documents since inception, so the Plaintiff can know what FOIA requests need to be made. If the Defendant(s) and Attorney(s) involved do not comply with their answers to this demand, Plaintiff will request that the Court issue summary judgment and remedy the Plaintiff, and Defendant(s) will justify your continuous wrongful, unauthorized, negligent, reckless disregard, malicious and willful intent to injure and damage Plaintiff as claimed in this case by the Plaintiff and further demand summary judgement in the matter against the Defendant(s), Attorney and Court Fees involved if applicable, collected from the Defendant(s).  This updated Affidavit replaced the Affidavit Dated September 11, 2020.

### AFFIDAVIT

COMES NOW Plaintiff, Nelson L. Bruce, hereafter "I", "my", "Me", "Plaintiff", in my correct private capacity as beneficiary to the Original Jurisdiction, being of majority in age, competent to testify, a self-realized and free sentient man upon the land my yes be yes, my no be no, do state that the truths and facts herein are of first hand personal knowledge, true, correct, and complete as I am the living human being and man, sui juris.

AFFIDAVIT, DISCOVERY                    P a g e  1 | 11

## DEMAND FOR DISCOVERY

The preponderance of this case, as any other, starts with proof, without a doubt, of a true claim to the Bond, Receivables, Payables and Securities involved all without the use of presumptive validity, vapor money theories, or any use of traditional tactics untoward as this is a Tax Issue. The Facts are all that will be sought after. I must, before anything else, acquire the Origination of the Debt Instrument in an attempt to identify the Defendant(s) as the Recipient of the Funds and to ensure the original Credits used for the creation of this Debt Instrument, which is how this Civil Claim came to existence, represents a Tax Matter and must be payable to the Original Creditor and NOT payable to Bearer.

I have prepared a set of questions for the Defendant(s) and for every Attorney to fill out and file into the Court on their own with their own 1040 Tax forms for the last four years (2015-2019), to determine their validity in this case and to justify their claim, to be answered truthfully, Notarized and Recorded in an Affidavit, before the Court that demands a response, and further, Documentations that need to be looked over by the Court and the Plaintiff which will assist in settling the controversy of who is the Creditor-in-Fact, and who is the Debtor-in-Fact, as so, must be affirmed in a point by point questionnaire, and under Oath.

Refusal of this Demand or obfuscation in manner, within thirty (30) days, will result in a Notice to the Court and a Summary Judgment Order will be sought, and remedy by Awarded Judgement, Damages, Litigation Officers of the Court fees and or Court Fees ordered to be paid for by the Defendant(s) and to the Plaintiff by Order of the Court and within ten (10) days from Order.

I additionally demand that the Defendant(s) conduct their own audit of my account(s) (202985786 and/or 7000124554), since its inception to the present date, to validate the debt the Defendant(s) claims I owe or previously owed.  Please do not rely on previous servicers or originators records, assurances, or indemnity agreements, or otherwise refuse to conduct a full audit of my account.

I understand that potential errors could have wrongfully resulted in one or all of the following:

1. Increased the amounts of my purported monthly payments;
2. Increased the principal balance I purportedly owe;
3. Increased my purported escrow payments;
4. Increased the purported amounts applied and attributed toward interest on my account;
5. Decreased the purported proper amounts applied and attributed toward principal on my account; and/or
6. Purportedly assessed, charged, and/or collected fees, expenses, and other charges I am not legally obligated to pay under my mortgage, note, loan and/or deed of trust.

In order to completely and properly conduct the audit of my loan since its inception, I need to have full and immediate disclosures, including copies of all pertinent information regarding my loan. Please affix Documents and Answers to ALL questions that apply to this case, and keep in

mind that there may be questions or concerns you may feel do not pertain to this case and I will use a non-response to any number not responded to as a "Not Applicable" response, which is also evidentiary information.

All questions posed to be answered by the Defendant(s), Attorney or Agent is henceforth expressed by using "you" or "your" and will mean one and the same. Any defects in answers or documents will constitute a flaw worthy of a defect and an admission in favor of the Plaintiff, Nelson L. Bruce and brought to the attention of the Court. "Verified" shall mean signed under oath and penalty of perjury by an individual with physical firsthand knowledge of the facts. "Questions" presented in this request shall mean and constitute as "interrogatories". The documents requested, and answers to my questions, are needed to ensure that my alleged loan:

7. Was originated in lawful compliance with all federal and state laws, regulations including, without limitation, RESPA, TILA, Fair Debt Collection Act, and HOEPA;
8. That any sale or transfer of my alleged loan was conducted in accordance with law and was a true sale of my note and delivery of my original wet-ink signature note;
9. That the claimed holder in due course or previous holder in due course of my wet-ink signature promissory note and/or deed of trust is holding, or was holding such note in compliance with all laws and is entitled to the benefits of my payments;
10. That all appropriate disclosures of terms, costs, commissions, rebates, kickbacks, and other fees were properly disclosed to me at the inception of the alleged loan;
11. That each servicer and/or sub-servicer of my alleged mortgage or loan has serviced my alleged mortgage or loan in accordance with the terms of my alleged mortgage, loan, promissory note, and/or deed of trust;
12. That each servicer and sub-servicer of my mortgage or loan has serviced my alleged mortgage or loan in compliance with all laws;
13. That my alleged mortgage loan and/or loan has properly been credited, debited, adjusted, amortized, and charged;
14. That interest and principal have been properly calculated and applied to my alleged loan;
15. That my alleged principal balance has been properly calculated, amortized, and accounted for; And
16. That charges, fees, and expenses for which I am not obligated by any agreement, have not been charged, assessed, or collected from my alleged account.
17. That you have and/or had authority to request and collect payments from the plaintiff at anytime since the inception of the allege mortgage loan.

In order to validate my debt and audit my account to show authority to report and accuracy of reporting, I need copies of pertinent documents to be produced to me as discovery in this matter. I also need answers, in writing, to various servicing questions/interrogatories. For each record in electronic format, please provide a paper copy of all such information. Please send all of these items to me at the address or Email below as soon as possible upon notarizing and recording into the Court.

18. Produce all data, information, notations, text, figures, and information contained in your mortgage servicing and accounting computer systems including, without limitation, Alltel or Fidelity CPI system or any other similar mortgage servicing software used by you, any

AFFIDAVIT, DISCOVERY                    P a g e  3 | 11

servicers or sub-servicer of my mortgage account from the inception of my alleged loan to the present with all descriptions and legends of all codes used in your mortgage servicing and accounting system so that I can properly exam for my alleged mortgage account.

19. Produce all assignments, transfers, allonges, or other document evidencing a transfer, sale, or assignment of my alleged mortgage, deed of trust, original wet-ink signature promissory note, or other document that secures payment of my obligation from the inception of my loan to the present, including any such assignments on Mortgage Electronic Registration System (MERS).

20. Produce all records, electronic or otherwise, of assignments of my allege mortgage, promissory note, or servicing rights to my alleged mortgage, including any such assignments on MERS.

21. Produce the front and back of each canceled check, money order, draft, debit, or credit notice issued to any servicer of my alleged account for payment of any monthly payment, other payment, escrow charge, fee, or expense on my alleged account.

22. Produce all escrow analyses conducted on my alleged account from the inception of my alleged loan to the present.

23. Produce the front and back of each payment, receipt, check, money order, draft, debit, and written evidence of payments made by me or others on my alleged account.

24. Produce all letters, statements, and documents sent to me by your company and any affiliate, parent company, agent, sub-servicer, servicer, attorney, or other representative of your company.

25. Produce all electronic transfers, assignments, sales of my note, mortgage, deed of trust or other Security instrument and proof of delivery of my original wet-ink signature promissory note to all alleged holders and holders in due course.

26. Produce all invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments, or any expense which has been charged to my alleged mortgage account from the inception of my alleged loan to the present.

27. Produce all checks used to pay invoices for each charged such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments, or any expense which has been charged to my alleged mortgage account from the inception of my alleged loan to the present.

28. Produce all agreements, contracts, and understandings with vendors that have been paid for any charge on my alleged account from the inception of my alleged loan to the present.

29. Produce all loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers, and documents that relate to the accounting of my alleged loan from the inception of my alleged loan to present.

30. Produce all loan servicing transaction records, ledgers, registers, and similar items detailing how my alleged loan has been serviced from the inception of my alleged loan to present. This is needed to conduct a complete audit of my alleged account, and to determine all proper amounts due.

31. Produce all PSA (Purchase and Sales Agreement and or similar) and Form 8-K filed under oath with the Securities and Exchange Commission which my alleged mortgage has been pooled under (in any and all mortgage backed securities (MBS)) since the inception of my alleged mortgage to present also the separate document called the Mortgage Loan Purchase

Agreement ("MLPA") which is attached to the PSA and the EIN attached to this MBS Pool.

32. Produce all S3 (A registration statement with the SEC) that is associated with registering and pooling my allege mortgage and Note in any and all Mortgage Backed Securities – MBS.

33. Produce all 424 B-5 and/or 424 B-3 prospectus (security filing) associated with my alleged mortgage and Note being pooled in any and all mortgage backed securities with the SEC.

34. Produce all FASB (Financial Accounting Standards) in referenced to the "OFF BALANCE SHEETS" associated with the pooling of my mortgage and associated with my Note.

35. Produce all notes, ledgers, ticker symbols, cusip numbers associated with mortgage account 202985786.

36. Produce all Bookkeeping Journal Entries (Bookkeeping Entry) associated with my alleged mortgage/alleged loan.

37. Produce all documents that represent the banks claiming a loss or interest by producing the RC-S & RC-B Call Schedules/Reports and forms FAS 125, 133, 140, 5 or 95, the Bonding Certificates, Bond Info (Fidelity Bond and E&O Insurance) attached to the pool of mortgages my mortgage is pooled and has been pooled in from 2009-present.

38. Produce any and all Fidelity Bonds, Errors and Emission Insurance policies and PMI/MIP Insurance policy coverages (Private Insurance or otherwise) that was obtained and maintained by you, the issuer and borrower and also as required under 24 CFR 320.11 required by Ginnie Mae MBS and any other MBS organizations for you to have in place for which was maintained by you in regards to the MBS pool or pools that mortgage number 202985786 is and/or has been pooled under, the name and phone number of the insurance/bond company and policy numbers and copies of any and all claims that may have been filed by you on either one of these policies and by whom they were filed, who filed them, and who received the claims. Also produce the EIN numbers associated with any and all pools of MBS this mortgage has been pooled in with Ginnie Mae or any other MBS organization.

39. Produce all forms and appendixes you are required by Ginnie Mae to have filled out and filed by as an issuer which you have completed and sent to Ginnie Mae since the initiation of this mortgage loan and the pooling of my mortgage in one of Ginnie Mae's MBS. Reference to these forms you are required to have filed with Ginnie Mae are found on HUD                website                at                on https://www.ginniemae.gov/issuers/program_guidelines/pages/formsquicklinks.aspx

40. Produce all "Deposit Slips and Receipts" issued for the "Deposit" of my "Note" associated with the alleged loan.

41. Produce all FR 2046 (balance sheet) collected by the Federal Reserve associated with my "Note" and the mortgage amount referencing the value of the "Note" calculated together with other entries when filing of this form.

42. Produce all power of attorneys you have and you have given to Carrington Mortgage Services, LLC which they are or was operating off of on your behalf that are filed /recorded on the records in Dorchester County, SC or should have been filed on the record as required by law to be filed in this state to be an agent in fact with authority under a power of attorney as it relates to this plaintiffs mortgage.

AFFIDAVIT, DISCOVERY                Page 5|11

43. Produce all evidence and documentation which documents and identifies that you gave Nelson L. Bruce an actual mortgage loan of funds directly from your account balance or an account Balance of Countrywide Bank FSB, the alleged original creditor.

44. Produce all evidence and documentation which documents and identifies the Account number, account ledgers, the Source from which the money came to Fund the original "Check, ACH/Wire Transfer or Fedwire" to which the funds came out of to allegedly fund Nelson L. Bruce alleged mortgage loan at closing, the date the account was opened and the date the account was closed along with proof of the balances and all transactions from this account since it was opened to the date it was closed, the account holders name for this account who was the owner of this account.

45. Produce all evidence and documentation which documents and identifies what specie of money you allegedly loaned Nelson L. Bruce (Federal Reserve Notes or Bookkeeping entry credit) and proof that this was disclosed to Nelson L. Bruce before he made the determination to accept the alleged loan which would evidence a meeting of the minds, mutual assent, a requirement to have a valid contract with any party associated with the allege Mortgage.

46. Produce any and all copies of mortgage insurance certificates you received since the initiation of the plaintiff's alleged mortgage which document who is the beneficiary of this insurance along with the terms of this insurance policy.

47. Produce a full and complete audited account ledgers that you have for mortgage account number 202985786 including any credits and debits from this account since the initiation of this account to present.

48. Produce a full and complete certified chain of title from the initiation of this alleged loan to present as evidence to document and support your facts in regards to the referenced loan and transfers of the ownership of the loan from one party to the next.

49. Produce all records evidencing requests for credit pulls of plaintiff's credit report with Experian, Equifax, and Transunion from March 2017 to present.

50. Produce all verified responses to disputes/correspondences you received from Plaintiff and any and all credit bureaus from January 2015 to present.

51. Produce all BANA accounts and ledgers which identify transfer of funds to which document all mortgage accounts/account numbers and the full amounts that were credited to these accounts under the "National Mortgage Settlement Agreement" which BANA alleged that they credited between $8.58 billion to $20.7 billion in credited relief to accounts of borrowers principal balances on their mortgages under the terms of the settlement and the consent order and proof of where these credits were generated from, which account they came from to credit the mortgagers accounts..

Accordingly, please provide written responses to the following:

## LOAN ACCOUNTING & SERVICING SYSTEMS

Please provide documents I have requested and a detailed answer to each question. Please identify each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of my alleged loan to the present so that I and/or my experts can decipher the data provided.

For each loan accounting and servicing system identified by you and any sub-servicer or

previous servicer from the inception of my loan to the present, please provide the name and address of the company or party that designed and sold the system. For each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of my loan to the present, please provide the complete transaction code list for each system so that my experts can adequately audit my alleged account.

### DEBITS & CREDITS REQUEST FOR PRODUCTION

In a spreadsheet form or in letter form in a columnar format, please detail each credit on my alleged account and the date such credit was posted to my alleged account, as well as the date any credit was received. In a spreadsheet form or in letter form in a columnar format, please detail each credit and debit on my account and the date debit was posted to my account as well as the date any credit and debit was received. For each debit or credit listed, please provide the definition for each corresponding transaction code you utilize. For each transaction code, please provide the master transaction code list used by you or previous servicers.

### MORTGAGE & ASSIGNMENTS QUESTIONS/INTERROGATORIES

52. Has each sale, transfer, or assignment of my mortgage, promissory note, deed of trust, or any other instrument I executed to secure my debt been recorded in the county property records in the county and state in which my property is located from the inception of my loan to the present? If not, why?

53. Have any sales, transfers, or assignments of my mortgage, promissory note, deed of trust, or any other instrument I executed to secure my alleged debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of my loan to the present? If yes, please detail the names of each seller, purchaser, assignor, assignee, or any holder in due course to any right or obligation of any note, mortgage, deed, or security instrument I executed securing the obligation on my account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in my principal and interest payments.

### SUSPENSE/UNAPPLIED ACCOUNTS QUESTIONS/INTERROGATORIES

(For purposes of this section please treat the term "suspense account" and "unapplied account" as one in the same.)

54. Has there been any suspense account transactions on my alleged account from the inception of my alleged loan to present? If yes, please explain the reason for each suspense account transaction and provide a spreadsheet or in letter form in a columnar format detailing each suspense account transaction, both debits and credits that has occurred on my account from the inception of my loan to the present.

### LATE FEES QUESTIONS/INTERROGATORIES

For purposes of my questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

55. Have you reported the collection of late fees on my account as interest in any statement to me or to the IRS?
56. Has any previous servicer or sub-servicer of my mortgage reported the collection of late fees on my account as interest in any statement to me or to the IRS?
57. Do you consider the payment of late fees as liquidated damages to you for not receiving my payment on time?
58. Are late fees considered interest?
59. Please detail what expenses and damages you or others incurred for any payment I made that was late.
60. Were any of these expenses or damages charged or assessed to my account in any other way? If yes, please describe what expenses or charges were charged or assessed to my account.

Please identify the provision of any note, mortgage, deed of trust, or any agreement I signed which authorized the assessment or collection of late fees. Please detail and list any adjustments in late fees assessed, charged, or collected, and on what date such adjustment was made and the reasons for such adjustment.

61. Has interest been charged on any late fee assessed, charged, or collected to my alleged account?
62. Is interest allowed to be assessed or charged on late fees charged or assessed to my alleged account? If yes, identify the provision of any document I signed which authorizes same.
63. Please provide the payment dates you or other previous servicers of my alleged account claim I have made a late payment.

### PROPERTY INSPECTIONS QUESTIONS/INTERROGATORIES

(For purposes of this section "property inspection" and "inspection fee" refer to any inspection of my property by any source and any related fee or expense charged, assessed, or collected for such inspection.)

64. Is interest allowed to be assessed or charged on inspection fees charged or assessed to my account? If so when and how much was charged?
65. Has any fee charged or assessed for property inspections been placed into my escrow account? If so please forward copies of all property inspections made on my property in my mortgage loan file.

### BPO FEES QUESTIONS/INTERROGATORIES

66. Have any BPO fees been assessed, charged, and/or collected to my account? If so, please explain specifically what provision in my note, mortgage, deed of trust, or any agreement I have executed allows you to assess, charge, or collect a BPO fee from me.
67. Has any fee charged or assessed for a BPO been placed into my escrow account?

## SERVICING RELATED QUESTIONS/INTERROGATORIES/REQUEST FOR PRODUCTION

(I need the following answers to questions/interrogatories concerning the servicing of my mortgage account for the inception of my mortgage account to the present.)

68. Did the originator or previous servicer of my loan have any financing agreements or other contracts with your company or an affiliate of your company?

69. Did the originator or previous servicer of my loan have a warehouse loan agreement or contract with your company?

70. Did the originator or previous servicer of my loan receive any compensation, fee, commission, payment, rebate, or other consideration from your company or any affiliate of your company for handling, processing, originating, or administering my loan? If yes, please describe and itemize each form of consideration paid to the originator of my loan by your company or any such affiliate.

71. Has my mortgage loan been made a part of any mortgage pool since the inception of my loan? If yes, identify each such loan mortgage pool that my mortgage has been a part of from the inception of my loan to the present?

72. Please Produce and identify the parties and their addresses to all sales contracts, servicing agreements, assignments, allonges, transfers, indemnification agreements, recourse agreements, their positions with you, when they were hired, when they were layed off or left the company in connection with any agreement related to my loan from its inception to the present.

73. Please provide copies of all sales contracts, servicing agreements, assignments, allonges, transfers, indemnification agreements, recourse agreements, and any agreement related to my loan from its inception to the present.

74. Who did you issue a check or payment to for my mortgage if purchased? Please provide a copy of the front and back of canceled checks and copies of any wires or ACH.

75. Please produce the 1099 Original Issue Tax Form(s) and the 1040 Tax Form(s) that should accompany this Debt Instrument.

Please produce the documents I have requested and a detailed answer to each question/interrogatory within the time frame required by law. Upon receipt of your response, an audit will be conducted that may lead to a further request under an additional Qualified Written Request/Discovery Request.

### NOTICE

In the event a complete response and production of documents is not received within the lawful time frame, it is my intention to send copies of this record to the Court in support of a summary judgment request.

### EVIDENCE FOR THE RECORD TO SUPPORT A SUMMARY JUDGMENT IF DEFENDANT(S) DO NOT RESPOND AND OR REBUTT THIS AFFIDAVIT WITH PRODUCTION OF DOCUMENTED MATERIAL FACTS THAT SUPPORT THEIR ANSWERS AND OR REBUTTALS

I, Nelson L. Bruce, in honor, state, attest, certify and affirm under oath within the jurisdiction of Sui Juris, that the following is true and correct and that any defects in answers or documents and not limited to filings with any or all Tax Forms, will constitute a flaw worthy of a summary judgment, and brought to the attention of the Court. The documents requested, and answers to my questions by all involved titles in Office of the Court, are needed to ensure a fair and accurate picture of events that took place from the inception of the debt, and will sufficiently establish and prove the claims presented by the Plaintiff.

When this collection of questions/interrogatories and documents are completely answered in satisfaction, the Plaintiff will follow up with a full examination of the required attention to any claims made by the Plaintiff. If the Plaintiff and Attorneys involved do not comply with their answers to this demand, a motion for summary judgment will be requested where a copy of this Affidavit will be filed to support the Plaintiff's claims for summary judgment to the Court and will justify your continuous wrongful, unauthorized, negligent, reckless disregard, malicious and willful intent to damage and injure the Plaintiff.

*Nelson L. Bruce* 10-10-2020

Nelson L. Bruce, Propria Persona, Sui Juris
"All Natural Rights Explicitly Reserved and Retained"
U.C.C.1-207/ 1-308, 1-103.6
c/o 144 Pavilion Street
Summerville, South Carolina 29483
Phone: 843-437-7901
Email: leonbruce81@yahoo.com

STATE OF <u>South Carolina</u>

COUNTY OF <u>Dorchester</u>.

Subscribed and sworn to (or affirmed) before me on this <u>10TH</u> day of **October, 2020 A.D.,** by <u>Nelson L. Bruce</u> proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

BRETT DORMINY
Notary Public For South Carolina
Comm. Expires July 1, 2024

_____
Signature of Notary

<u>Brett Dorminy</u>
Name of Notary (Typed, Printed or Stamped)

My Commission Expires: <u>07-01-2024</u>

BRETT A. DORMINY
NOTARY
PUBLIC
SOUTH CAROLINA

DISCOVERY                Page 10|11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically

mailed to all parties on the service list **via the: UNITED STATES POSTAL SERVICE by the**

**UNITED STATES POST OFFICE via Postage Prepaid Priority Mail.**

**SENT TO:**

McGuire Woods LLP
Attention: Brian A. Calub
201 North Tryon Street, Suite 3000
Charlotte, North Carolina 28202-2146
(704) 343-2009

*Counsel of Record Attorney for Defendant Bank of America, N.A.*

"Without Prejudice"

*Nelson L. Bruce* 10-10-2020
Nelson L. Bruce, Propria Persona, Sui Juris
"All Natural Rights Explicitly Reserved and Retained"
U.C.C.1-207/ 1-308, 1-103.6
c/o 144 Pavilion Street
Summerville, South Carolina 29483
Phone: 843-437-7901
Email: leonbruce81@yahoo.com

AFFIDAVIT, DISCOVERY                    P a g e   11 | 11

# EXHIBITS C-4



**Philip A. Lehman**
*Assistant Attorney General*
Consumer Protection Division
*North Carolina Department of Justice*

# EXECUTIVE SUMMARY OF MULTISTATE/ FEDERAL SETTLEMENT OF FORECLOSURE MISCONDUCT CLAIMS

The settlement between the state attorneys general and the five leading bank mortgage servicers will result in approximately $25 billion dollars in monetary sanctions and relief. The settlement represents the largest financial recovery obtained by the attorneys general except for the 1998 Master Tobacco Settlement. The accord will enable hundreds of thousands of distressed homeowners to stay in their homes through enhanced loan modifications. It will also fund payments to victims of unfair foreclosure practices and provide support for housing counseling and state-level foreclosure prevention programs.

In addition to the monetary allocations, the settlement will require comprehensive reforms of mortgage loan servicing. The mandated standards will cover all aspects of mortgage servicing, from consumer response to foreclosure documentation. To ensure that the banks meet the new standards, the settlement will be recorded and enforceable as a court judgment. Compliance will be overseen by an independent monitor who will report to the attorneys general and the court.

The settlement follows ten months of intensive negotiations between the five banks and a coalition of state attorneys general and federal agencies, including the Departments of Justice, Treasury, and Housing and Urban Development. The investigation began in October 2010 following revelations of widespread use of "robo-signed" affidavits in foreclosure proceedings across the country. State attorneys general formed a working group to investigate the problem and to confront the banks about the allegations. The major mortgage servicing banks soon acknowledged that individuals had been signing thousands of foreclosure affidavits without reviewing the validity or accuracy of the sworn statements. Several national banks then agreed to stop their foreclosure filings and sales until corrective action could be taken.

While the robo-signing issue received the most attention, other servicer-related problems were identified, including deceptive practices in the offering of loan modifications (for example, telling consumers that a loan modification was imminent while simultaneously foreclosing). The performance failures resulted in more than just poor customer service. Unnecessary foreclosures occurred due to failure to process homeowners' requests for modified payment plans. And where foreclosures should have been concluded, shoddy documentation led to protracted delays. This misconduct threatened the integrity of the legal system and had a negative impact on communities and the overall housing market.

All 50 state attorneys general determined that the compliance and performance failures prevalent in mortgage servicing were a high priority law enforcement and consumer protection matter. A bipartisan Negotiating Committee, made up of eight attorneys general, led the settlement negotiations. The Committee had extensive discussions with a wide variety of stakeholders, including investor groups, state banking examiners, bankruptcy attorneys, consumer groups and

1

legal aid attorneys. The assistance and cooperation of state banking regulators and the Conference of State Banking Supervisors was particularly helpful in developing expertise. The attorneys general also partnered with federal authorities in order to benefit from their expertise and investigations. A working relationship with federal agencies was particularly important because national banks assert that state officials have no authority to investigate their banking practices.

The negotiations focused on robo-signing and mortgage servicing misconduct. The resulting settlement addresses the primary goals of the attorneys general: to provide immediate relief to enable struggling homeowners to avoid foreclosure; to bring badly needed reform to the mortgage servicing industry; to ensure that foreclosures are lawfully conducted; and to penalize the banks for robo-signing misconduct. The settlement imposes monetary sanctions on the banks while providing immediate and continuing relief to homeowners. Full litigation of the states' claims would likely have taken years, at a time when the foreclosure crisis requires immediate relief for homeowners. And adjudication of state-based robo-signing claims may have led to civil penalties but could not have yielded the amount and scope of the relief obtained in this settlement.

The settlement was not intended to address issues related to mortgage loan securitization or the concerns of investors. The settlement does not release securitization claims, so private parties and government officials are free to pursue those claims. Nor does the settlement provide any immunity or release for criminal conduct.

# SUMMARY OF KEY SETTLEMENT TERMS

## I. Relief for Struggling Homeowners

The settlement requires the five banks to allocate a total of $17 billion in assistance to borrowers who have the intent and ability to stay in their homes while making reasonable payments on their mortgage loans. At least 60 percent of the $17 billion must be allocated to reduce the principal balance of home loans for borrowers who are in default or at risk of default on their loan payments. Many homeowners, particularly in states like Florida, Arizona, Nevada and California, have negative equity in their homes and have no realistic ability of refinancing or selling their homes, or to build equity. Principal reductions will also yield lower payments and will give homeowners a fair opportunity to preserve their homes.

In addition to principal reductions, the banks must allocate funds, approximately $5.2 billion, for other forms of homeowner assistance. These options include the facilitation of short sales which allow houses to be bought and sold when the mortgage balance exceeds the value of the property. Another program is unemployed payment forbearance, which will defer payments for homeowners who are between jobs. Other options for funding include relocation assistance for homeowners facing foreclosure, waiving of deficiency balances, and funding for remediation of blighted properties.

## II. Refinancing of Underwater Homes

To assist homeowners who are not delinquent on their payments but cannot refinance to lower rates because of negative equity, the banks must offer refinance programs totaling at least $3 billion. The banks will be required to notify eligible homeowners of the availability of these programs. To be eligible, a borrower must be current on mortgage payments, have a loan to value ratio in excess of 100%, and must have a current interest rate in excess of 5.25%. The refinanced rate must reduce monthly payments by at least $100 or the interest rate by at least 0.25%.

## III. Mortgage Servicing Reforms

A major component of the settlement is the comprehensive reform of mortgage servicing practices. The new standards will prevent mortgage servicers from engaging in robo-signing and other improper foreclosure practices. The standards will require banks to offer loss mitigation alternatives to borrowers before pursuing foreclosure. They also increase the transparency of the loss mitigation process, impose time lines to respond to borrowers, and restrict the unfair practice of "dual tracking," where foreclosure is initiated despite the borrower's engagement in a loss mitigation process.

Specific new servicing standards include:

- Information in foreclosure affidavits must be personally reviewed and based on competent evidence.
- Holders of loans and their legal standing to foreclose must be documented and disclosed to borrowers.
- Borrowers must be sent a pre-foreclosure notice that will include a summary of loss mitigation options offered, an account summary, description of facts supporting lender's right to foreclose, and a notice that the borrower may request a copy of the loan note and the identity of the investor holding the loan.
- Borrowers must be thoroughly evaluated for all available loss mitigation options before foreclosure referral, and banks must act on loss mitigation applications before referring loans to foreclosure; i.e. "dual tracking" will be restricted.
- Denials of loss mitigation relief must be automatically reviewed, with a right to appeal for borrowers.
- Banks must implement procedures to ensure accuracy of accounts and default fees, including regular audits, detailed monthly billing statements and enhanced billing dispute rights for borrowers.
- Banks are required to adopt procedures to oversee foreclosure firms, trustees and other agents.
- Banks will have specific loss mitigation obligations, including customer outreach and communications, time lines to respond to loss mitigation applications, and e-portals for borrowers to keep informed of loan modification status.
- Banks are required to designate an employee as a continuing single point of contact to assist borrowers seeking loss mitigation assistance.
- Military personnel who are covered by the Service members Civil Relief Act (SCRA) will have enhanced protections.
- Banks must maintain adequate trained staff to handle the demand for loss mitigation relief.
- Application and qualification information for proprietary loan modifications must be publicly available.
- Servicers are required to expedite and facilitate short sales of distressed properties.
- Restrictions are imposed on default fees, late fees, third-party fees, and force-placed insurance.

## IV. Monitoring and Enforcement

The settlement with each bank will be incorporated into a Consent Judgment that will be submitted to a federal judge for approval. Compliance with the servicing standards and financial obligations of the banks can be ultimately enforced through court process. Civil penalties may be assessed for violations of the Consent Judgment.

The banks' performance of their obligations under the settlement will be overseen by an independent Monitor. The Monitor will employ a staff of professionals to review the banks' compliance. The Monitor will issue periodic reports to the attorneys general, including notices of any potential violations.

The banks will report on their compliance in the form of agreed-upon metrics and outcome measures. Included among the compliance metrics are testing for proper documentation of foreclosures, loss mitigation offers and proper evaluation of loan modification applications. There will also be testing to ensure that borrowers' account information is accurate and that any fees are properly assessed and are not excessive. If banks fail to remedy violations, they are subject to civil penalties of up to $5 million from the court.

## V. Payments to Foreclosure Victims

Approximately $1.5 billion of the settlement funds will be allocated to compensation to borrowers who were foreclosed on after January 1, 2008. These borrowers will be notified of their right to file a claim. Borrowers who were not properly offered loss mitigation or who were otherwise improperly foreclosed on will be eligible for a uniform payment, which will be approximately $2000 per borrower depending on level of response. Borrowers who receive payments will not have to release any claims and will be free to seek additional relief in the courts. Borrowers may also be eligible for a separate restitution process administered by the federal banking regulators.

## VI. Payments to the States

The remaining settlement funds, approximately $2.5 billion, will be paid to the participating states. The funds may be distributed by the attorneys general to foreclosure relief and housing programs, including housing counseling, legal assistance, foreclosure prevention hotlines, foreclosure mediation, and community blight remediation. A portion of the funds may also be designated as civil penalties for the banks robo-signing misconduct.

## VII. Release of Claims

The proposed Release contains a broad release of the banks' conduct related to mortgage loan servicing, foreclosure preparation, and mortgage loan origination services. Claims based on these areas of past conduct by the banks cannot be brought by state attorneys general or banking regulators.

The Release applies only to the named bank parties. It does not extend to third parties who may have provided default or foreclosure services for the banks. Notably, claims against MERSCORP, Inc. or Mortgage Electronic Registration Systems, Inc. (MERS) are not released.

Securitization claims, including claims of state and local pension funds, and including investor claims related to the formation, marketing or offering of securities, are fully preserved. Other claims that are not released include violations of state fair lending laws, criminal law enforcement, claims of state agencies having independent regulatory jurisdiction, claims of county recorders for fees, and actions to quiet title to foreclosed properties. Of course, the Release does not affect the rights of any individuals or entities to pursue their own claims for relief.



# FACT SHEET:
## MORTGAGE SERVICING SETTLEMENT

### FINANCIAL RELIEF FOR HOMEOWNERS:

The servicers will be required to dedicate $20 billion to various forms of relief to borrowers.

- *Principal reduction.* At least $10 billion will be dedicated to reducing principal for borrowers who, as of the date of the settlement, owe more on their mortgages than their homes are worth and are either delinquent or at imminent risk of default.

- *Refinancing.* At least $3 billion will be dedicated to a refinancing program for borrowers who are current on their mortgages but who owe more on their mortgages than their homes are worth. All borrowers who meet basic eligibility criteria will be eligible for the refinancing, which will reduce interest rates for borrowers who are currently paying much higher rates or whose adjustable rate mortgages are due to soon rise to much higher rates.

- *Other forms of relief.* Servicers will be required to dedicate up to $7 billion to other forms of relief, including forbearance of principal for unemployed borrowers, anti-blight programs, short sales and transitional assistance, benefits for service members who are forced to sell their homes at a loss as a result of a Permanent Change in Station, and other programs.

To encourage servicers to provide relief quickly, there are incentives for relief provided within the first 12 months – and additional cash payments required for any servicer that fails to meet its obligation within three years.

Servicers will receive only partial credit for every dollar spent on some of the required activities, so the settlement will provide direct benefits to borrowers in excess of $20 billion.

### PAYMENTS TO STATE AND FEDERAL GOVERNMENTS:

In addition to the $20 billion of financial relief for homeowners, the servicers will make $5 billion in cash payments to the states and federal government. Of the $5 billion:

- *Payments to Foreclosed Borrowers.* Through the settlement, a $1.5 billion Borrower Payment Fund will be established to provide cash payments to borrowers whose homes were sold or taken in foreclosure between and including Jan. 1, 2008 and Dec. 31, 2011, and who meet other criteria. This program is distinct from, but complimentary to, the restitution program currently being administered by federal banking regulators to compensate those who suffered direct financial harm as a result of wrongful servicer conduct.

1

# MORTGAGE SERVICING SETTLEMENT FACT SHEET

- *State and federal payments.* The remaining funds will go to state and federal governments to be used to repay public funds lost as a result of servicer misconduct, fund housing counselors, legal aid, and other similar purposes determined by state attorneys general. The funds coming to the federal government will primarily be allocated to the FHA Capital Reserve Account, with portions also going to the Veterans Housing Benefit Program Fund and to the Rural Housing Service.

## FINANCIAL OBLIGATIONS OF INDIVIDUAL SERVICERS:

| INSTITUTION | FEDERAL AND STATE PAYMENTS | RELIEF TO BORROWERS (Principal Writedown, Refinancing, and Other Programs) |
|---|---|---|
| Ally Financial, Inc. | $110 million | $200 million |
| Bank of America Corp. * including EDNY FHA origination settlement | $3.24 billion | $8.58 billion |
| Citigroup, Inc. | $415 million | $1.79 billion |
| J.P. Morgan Chase & Co. | $1.08 billion | $4.21 billion |
| Wells Fargo & Co. | $1.01 billion | $4.34 billion |

## NEW SERVICING STANDARDS:

Servicers are agreeing to implement extensive new servicing standards, designed to correct the kinds of conduct that harmed consumers during recent years.

- Stop many past foreclosure abuses, such as robo-signing, improper documentation and lost paperwork through new mortgage servicing standards.

- Require strict oversight of foreclosure processing, including of third-party vendors.

- Impose new standards to ensure the accuracy of information provided in federal bankruptcy court, including pre-filing reviews of certain documents.

- Make foreclosure a last resort, by requiring servicers to evaluate homeowners for other loan mitigation options first.

- Restrict banks from foreclosing while the homeowner is being considered for a loan modification.

- Set procedures and timelines for reviewing loan modification applications, and give homeowners the right to appeal denials.

- Create a single point of contact for borrowers seeking information about their loans and adequate staff to handle calls.

## MORTGAGE SERVICING SETTLEMENT FACT SHEET

**BENEFITS TO SERVICEMEMBERS AND VETERANS:**

The settlement contains a number of provisions designed both to protect servicemembers' rights under the law and to provide them significant additional benefits.

- *Wrongful foreclosures.* To resolve allegations of liability that have not previously been settled, Chase, Citi, Wells Fargo, and Ally have agreed to conduct a full review, overseen by the Department of Justice's Civil Rights Division, to determine whether any servicemembers were foreclosed on in violation of the Servicemembers Civil Relief Act (SCRA) since January 1, 2006. Ally, Citi, Wells Fargo will be required to provide any servicemember who was a victim of a wrongful foreclosure as a result of a violation of the SCRA with a payment equal to the servicemember's lost equity, plus interest, and an additional $116,785 or an amount provided for the same violation under the review conducted by the banking regulators, whichever is higher. To ensure consistency with an earlier settlement, JP Morgan Chase will provide any servicemember who was a victim of a wrongful foreclosure as a result of a violation of the SCRA either his or her home free and clear of any debt plus compensation for additional harm or the cash equivalent of the full value the home at the time of sale plus compensation for additional harm. The compensation for servicemembers wrongful foreclosed on is in addition to the $25 billion settlement amount.

- *Interest Charged in Excess of 6%.* To resolve allegations of liability that have not previously been settled, Citi, Wells Fargo, and Ally have also agreed to conduct a thorough review, overseen by the Department of Justice's Civil Rights Division, to determine whether any servicemember, from January 1, 2008 to the present, was charged interest in excess of 6% on their mortgage, after a valid request to lower the interest rate, in violation of the SCRA. Servicers will be required to provide any servicemember who was wrongfully charged interest in excess of 6% with a payment equal to a refund, with interest, of any amount charged in excess of 6% plus triple the amount refunded or $500, whichever is larger. This compensation for servicemembers is in addition to the $25 billion settlement amount.

- *PCS orders.* Under the Department of Defense's Homeowners' Assistance Program (HAP), certain service members who are forced to sell their home at a specified loss due to a Permanent Change in Station (PCS) may be partially compensated for the loss in their home's value. However, under the governing statute for HAP, only certain PCS servicemembers are eligible for benefits. Under this settlement, all of the participating servicers will provide mandatory short sale agreements and deficiency waivers to certain servicemembers who are currently ineligible for HAP.

- *Veterans Housing Benefit Program.* $10 million will be paid into the Veterans Housing Benefit Program Fund through which the Department of Veterans Affairs guarantees loans provided on favorable terms to eligible veterans. In addition, except where prohibited by statutory requirements, veterans with VA-guaranteed mortgages will be eligible for relief provided through the servicers' $20 billion consumer relief obligations.

- *Foreclosure Protections for Servicemembers Receiving Hostile Fire / Imminent Danger Pay.* For loans secured by servicemembers when they were not on active duty, the SCRA prohibits servicers from foreclosing on active duty servicemembers without first securing a court order. The settlement extends this protection to all servicemembers, regardless of when their mortgage was secured, who within nine months of the foreclosure received Hostile Fire/ Imminent Danger Pay and were stationed away from their home.

# MORTGAGE SERVICING SETTLEMENT FACT SHEET

## CLAIMS RESOLVED:

While resolving certain violations of civil law based on the banks' mortgage loan servicing activities, the United States and the state attorneys general preserved authorities in a number of areas.

- *Criminal authorities.* The United States and the state attorneys general can still pursue criminal enforcement actions.

- *Securities claims.* The agreement does not prevent the United States from pursuing action against the banks related to misrepresentations of the quality of loans that were packaged into mortgage-based securities or the conduct that is the focus of the new Residential Mortgage-Backed Securities Working Group. The states have also preserved their rights to bring actions related to securitization activities and MERS.

- *Loan Origination claims.* The United States retains its full authority to recover losses – and penalties – caused to the federal government when a bank failed to satisfy underwriting standards on a government-insured or government-guaranteed loan, with the exception of certain faulty origination practices by Bank of America on FHA-insured loans. These claims were resolved for $1 billion as part of the settlement. FHA retained its administrative authority to recover its actual losses when Bank of America submits an FHA loan for insurance review in the future.

- *Borrower claims.* The settlement does not prevent any claims by individual borrowers who wish to bring their own lawsuits.

## ENFORCEMENT:

Compliance with the settlement will be overseen by Joseph A. Smith, who will serve as Monitor in enforcing the consent judgment. As North Carolina's banking commissioner since 2002, Smith oversaw implementation of a leading foreclosure-prevention program; he has also served as Chairman of the Conference of State Banks Supervisors and was President Obama's nominee to serve as Director of the Federal Housing Finance Agency. The Monitor will oversee implementation of the extensive servicing standards required by the settlement; impose penalties of up to $1 million per violation (or up to $5 million for certain repeat violations); and publish regular public reports that identify any quarter in which the Servicer fell short of the standards imposed in the settlement. The settlement will be filed as a Consent Judgment in the United States District Court for the District of Columbia and remain in effect for three-and-a-half years.

# EXHIBITS C-5

FILE ON DEMAND

IN THE COURT OF COMMON PLEAS COURT OF DORCHESTER COUNTY

IN AND FOR THE REPUBLIC OF SOUTH CAROLINA

| | | |
|---|---|---|
| Wilmington Savings Fund Society. FSB as | ) | |
| Trustee of Stanwich Mortgage Loan | ) | **Case NO. 16-CP-18-1678** |
| Trust C | ) | |
| | ) | **MOTION TO VACATE/SET ASIDE** |
| Plaintiff, | ) | **JUDGMENT/ORDER PURSUANT** |
| | ) | **TO SC.R.CIV.P. 60(b),** |
| vs. | ) | **AUTHORIZATION FORM TO** |
| | ) | **COLLECT FILING FEE AND** |
| Nelson L Bruce | ) | **INSTRUCTIONS (445 FORM)** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## Motion To Vacate/Set Aside Judgment Pursuant to SC.R.Civ.P. 60(b)

This motion is brought pursuant to *SC.R.Civ.P. 60(b)*, Defendant Nelson L. Bruce,

Propria Persona, Sui Juris, the beneficial owner of the PUBLIC TRUST, hereby moves this Court to

vacate the judgment entered on **March 23, 2018 granting a substitution of the Plaintiff.** The

judge erred in granting this substitution for the following reasons:

### I.    STATEMENT OF FACTS PERTAINING TO SC.R.CIV.P. 60(b)(1),(4)

1. This court made a mistake by granting an order on **March 23, 2018** to substitute the

    Plaintiff's because there was supposed to be a motion and a notice of a hearing scheduled

    before there could be an order to substitute the Plaintiff and so Defendant could bring forth

his objections in the hearing in regards to the substitution in violation of *SC. R. Civ. P. 25(a)*. There is no such motion and notice of hearing scheduled, nor any evidence of a filing of this motion and hearing on the record for this substitution evidenced by **Exhibits - H (a copy and online print out of the current case details as of 8/20/2018 since the initiation of this unlawful action)**. The Defendant never receive service of this alleged motion and hearing to substitute the Plaintiff as required under *SC.R.Civ.P.5* nor did he receive a copy of the order by the court once the order was placed on **March 23, 2018** which is the same day this substitution request was filed evidenced by the record.

2. Regardless rather the attorney of record requested a hearing or not, the rules clearly state that a hearing must be given. This court nor the attorney of record who is an officer of the court are following the rules of civil procedure and are mistakenly trying to bypass the hearing that is required when substituting a party within the 90 day clear cut rule from the time interest is transferred and are clearly showing signs of being prejudice to the Defendant and neglecting **("excusable" or otherwise)** him of his due process rights and because of this substitution, it has limited the Defendant's discovery to the original Plaintiff who wrongfully brought forth this unlawful action and had no authority to bring forth this action therefor depriving the Defendant of his rights to object to the extremely late substitution of the Plaintiff who is alleged to be the new true parties in interest which has no standing because the other party never proved standing and the Defendant hereby objects to this substitution and incorporates this objection by reference as this case should have been dismissed for the reasons stated in this motion. The substitution was to be filed within 90 days of when the alleged mortgage

interest was allegedly sold and then transferred to the new party which judging by the

Substitute Plaintiff's **Exhibit A** filed on **March 23, 2018** would have been in **August of 2017**

which would have been before the hearing for the motion to dismiss by the Defendant, this

substitution was filed fatally late in violation of the clear-cut 90 day deadline in violation of

*SC.R.Civ.P.25 (a) & (c)*, and granted without a motion and a hearing in violation of

*SC.R.Civ.P.25 (a).* All alleged assignments in this case have evidence of constructive fraud

because they are either robo-signed, robo-stamped, or the person/individual allegedly signing

the assignments do not have authority to assign the alleged mortgage / alleged mortgage note

over to the other party to transfer interest and therefor the Judge erred in granting this

judgement/order and this judgment/order is void under *SC.R.Civ.P.60(b)(4)* and should have

been dismissed and the new party should have brought a new lawsuit to inforce their alleged

claims of interest.

3. Please consider the case of *Metcalfe v. Lee, 952 So.2d 624, at 628 (Fla. 4th DCA 2007)*, a

tutorial on construing all rules of civil procedure similar to the *Fla.R.Civ.P. 1.260* which is

the same as *SC.R.Civ.P.25*, where the goal is to *"strictly construe provisions of rules of civil*

*procedure to create rules that apply that are clear-cut and easy to apply." Supra at 628.*

Regarding *Rule 1.260* which is exactly the same as *SC.R.Civ.P.25*:

*"Unless the motion for substitution is made within 90 days after the death [or transfer of*

*interest] ... the action shall be dismissed as to the deceased party [or transferee]. A notice of*

*hearing must accompany the motion." Supra at 629.*

According to the strict time limits of *SC.R.Civ.P.25 (a) and (c)* which the attorney of record failed to comply with, even when the Defendant notified all parties by referencing these parties in his amended countersuit/counterclaims **(see...page 5 of 12 of this amended countersuit/counter claim filed on September 25, 2017),** which the plaintiff at the time and the attorney of record should have reviewed and the presiding judge should have dismissed the lawsuit instead of granting the substitution.

## I.    Defendant requests the following relief

Defendant requests that the Judgment/Order placed on **March 23, 2018** be vacated, the unlawful foreclosure be dismissed with prejudice against all parties both known and unknown, and that this court remand the remaining claims which are the Defendant's Counterclaims/ Countersuit back to District Court with direction for the Defendant to amend his suit as the new Plaintiff and address new issues as there are new facts and violations regarding the previous and new parties who are now coming forth and or provide direction for the defendant to consolidate his countersuit/counterclaims with any other lawsuits that maybe pending with the district court at the time of this order in regards to this matter as the Defendant explicitly reserves and retains any and all his natural rights, claims alleged in his countersuit/counterclaims by reference and hereby exercises these rights and reserves his claims and rights in this motion by reference and further relief as the Court may deem fit and proper.

## II.    Conclusion

For all the reasons set forth above, it is respectfully requested that this Court grant the relief requested as referenced above in regards to the judgement/order dated **March 23, 2018**.

RESPECTFULLY PRESENTED,

Without Prejudice"

*Nelson L. Bruce*    8-23-2018

THE BENEFICIAL OWNER OF THE CESTI QUI EQUITABLE TRUST
Nelson L. Bruce, Propria Persona, Sui Juris
All Rights Explicitly Reserved and Retained
U.C.C. 1-207/1-308, 1.103.6
c/o PMB 1605 Central Avenue, Ste.6 #167
Summerville South Carolina 29483
Ph. 843-437-7901

**FILE ON DEMAND**

IN THE COURT OF COMMON PLEAS COURT OF DORCHESTER COUNTY

IN AND FOR THE REPUBLIC OF SOUTH CAROLINA

| | | |
|---|---|---|
| Wilmington Savings Fund Society, FSB as | ) | |
| Trustee of Stanwich Mortgage Loan | ) | **Case NO. 16-CP-18-1678** |
| Trust C | ) | |
| | ) | **MOTION TO VACATE/SET ASIDE** |
| Plaintiff, | ) | **JUDGMENT/ORDER PURSUANT** |
| | ) | **TO FED.R.CIV.P. 60(b),** |
| vs. | ) | **AUTHORIZATION FORM TO** |
| | ) | **COLLECT FILING FEE AND** |
| | ) | **INSTRUCTIONS (445 FORM)** |
| Nelson L Bruce | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this motion has been electronically mailed

to all parties listed below:

Respectfully Presented,

**Addressed to:**
ALBERTELLI LAW
Attention: William S. Koehler (Attorneys for Plaintiff)
1201 Main Street, Suite 1450
Columbia, South Carolina 29201
Certified Mail #: 7017 2400 0000 3330 9711

"Without Prejudice"

*Nelson L. Bruce*    8-23-2018
THE BENEFICIAL OWNER OF THE CESTI QUI EQUITABLE TRUST
Nelson L. Bruce, Propria Persona, Sui Juris
All Rights Explicitly Reserved and Retained
U.C.C. 1-207/1-308, 1.103.6
c/o PMB 1605 Central Avenue, Ste.6 #167
Summerville South Carolina 29483
Ph. 843-437-7901

Page 6 of 6

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
) 1st JUDICIAL CIRCUIT
COUNTY OF DORCHESTER )
) CASE NO.: 16-CP-18-1678
)
Wilmington Savings Funds Society, FSB, ) **MOTION AND ORDER INFORMATION**
Trustee )
Plaintiff, ) **FORM AND COVERSHEET**
vs. )
)
Nelson L. Bruce; ect al. )
Defendant. )

| | |
|---|---|
| Plaintiff's Attorney:<br>William S. Koehler, Bar No. SC Bar 74935<br>Address:<br>1201 Main Street, Suite 1450<br>Columbia, SC 29201<br>Phone: (803) 828-0880 Fax _____<br>E-mail: wkoehler@alaw.net Other: _____ | Defendant's Attorney:<br>_____, Bar No. _____<br>Address:<br>_____<br>Phone: _____ Fax_____<br>E-mail: _____Other: _____ |

☒**MOTION HEARING REQUESTED (attach written motion and complete SECTIONS I and III)**
☐**FORM MOTION, NO HEARING REQUESTED (complete SECTIONS II and III)**
☐**PROPOSED ORDER/CONSENT ORDER (complete SECTIONS II and III)**

**SECTION I: Hearing Information**
Nature of Motion: *Motion to vacate/set Aside Judgment/order - March 23,2018 order*
Estimated Time Needed: *2 hrs.*     Court Reporter Needed: ☒YES/☐ NO *Audio recording requested*

**SECTION II: Motion/Order Type**
☒Written motion attached
☐Form Motion/Order
I hereby move for relief or action by the court as set forth in the attached proposed order.

*Nelson L. Bruce*                     *8-23-2018*
Signature of ~~Attorney~~ for ☐ Plaintiff /☒ Defendant     Date submitted

**SECTION III: Motion Fee**
☒ PAID – AMOUNT: $ *Fill out form SSA-445 to collect service Fee/form Attached*
☐ EXEMPT:              ☐ Rule to Show Cause in Child or Spousal Support
(check reason)         ☐ Domestic Abuse or Abuse and Neglect
                       ☐ Indigent Status    ☐ State Agency v. Indigent Party
                       ☐ Sexually Violent Predator Act    ☐ Post-Conviction Relief
                       ☐ Motion for Stay in Bankruptcy
                       ☐ Motion for Publication    ☐ Motion for Execution (Rule 69, SCRCP)
                       ☐ Proposed order submitted at request of the court; or,
                         reduced to writing from motion made in open court per judge's instructions
                         Name of Court Reporter: _____
                       ☐ Other: _____

| **JUDGE'S SECTION** | |
|---|---|
| ☐ Motion Fee to be paid upon filing of the attached order. | JUDGE CODE _____ |
| ☐ Other: | Date: _____ |

**CLERK'S VERIFICATION**

Collected by:_____    Date Filed: _____
☐ MOTION FEE COLLECTED: $ _____
☐ CONTESTED – AMOUNT DUE: $ _____

SCCA 233 (11/2003)

# EXHIBITS C-6

CHARLOTTE
NC 282
05 AUG 20
PM 3 L

From: BRIAN CALUB

McGUIREWOODS

201 North Tryon Street | Suite 3000
Charlotte, NC 28202-2146

To:

Nelson L. Bruce
144 Pavilion Street
Summerville, SC 29483

29483-844444

neopost™
06/04/2020
US POSTAGE $000.50⁰

FIRST-CLASS MAIL

ZIP 28202
041M12252317

# EXHIBITS C-7

USPS.com® - USPS Tracking® Results                    https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tL...

# USPS Tracking®

**FAQs** >

## Track Another Package  +

**Tracking Number:** 9505510545820228856617

Remove ✕

Your item has been delivered and is available at a PO Box at 7:59 am on August 17, 2020 in CHARLESTON, SC 29402.

**USPS Premium Tracking™ Available** ⌄

 **Delivered**

August 17, 2020 at 7:59 am
Delivered, PO Box
CHARLESTON, SC 29402

**Get Updates** ⌄

---

**Text & Email Updates** 

---

**Tracking History** 

August 17, 2020, 7:59 am
Delivered, PO Box
CHARLESTON, SC 29402
Your item has been delivered and is available at a PO Box at 7:59 am on August 17, 2020 in CHARLESTON, SC 29402.

August 17, 2020, 7:56 am
Arrived at Post Office
CHARLESTON, SC 29401

**August 17, 2020, 6:56 am**
Arrived at USPS Facility
CHARLESTON, SC 29402

**August 17, 2020, 6:24 am**
Departed USPS Regional Facility
CHARLESTON SC PROCESSING CENTER

**August 16, 2020**
In Transit to Next Facility

**August 15, 2020, 6:05 pm**
Arrived at USPS Regional Facility
CHARLESTON SC PROCESSING CENTER

**August 15, 2020, 12:00 pm**
USPS in possession of item
SUMMERVILLE, SC 29485

---

**Premium Tracking**                                                    ⌄

---

**Product Information**                                                  ⌄

---

**See Less** ⌃

**Tracking Number:** 9505526490310227625526          Remove ✕

Your item has been delivered and is available at a PO Box at 8:23 am on August 18, 2020 in
CHARLESTON, SC 29402.

**USPS Premium Tracking™ Available** ⌄

 **Delivered**

August 18, 2020 at 8:23 am
Delivered, PO Box
CHARLESTON, SC 29402

**Get Updates** ⌄

---

**Text & Email Updates**                                               ⌄

---

**Tracking History**                                                   ⌃

August 18, 2020, 8:23 am
Delivered, PO Box
CHARLESTON, SC 29402
Your item has been delivered and is available at a PO Box at 8:23 am on August 18, 2020 in
CHARLESTON, SC 29402.

August 18, 2020, 7:14 am
Arrived at Post Office
CHARLESTON, SC 29401

August 18, 2020, 7:01 am
Arrived at USPS Facility
CHARLESTON, SC 29402

August 18, 2020, 6:27 am
Departed USPS Regional Facility
CHARLESTON SC PROCESSING CENTER

August 15, 2020
In Transit to Next Facility

August 14, 2020, 9:30 pm
Arrived at USPS Regional Facility

CHARLESTON SC PROCESSING CENTER

August 14, 2020, 6:01 pm
Acceptance
CHARLESTON, SC 29406

**Premium Tracking**                                                     ⌄

**Product Information**                                                   ⌄

See Less ⌃

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

# EXHIBITS C-8

FILED - RECORDED

IN THE COURT OF COMMON PLEAS COURT OF DORCHESTER COUNTY

IN AND FOR THE REPUBLIC OF SOUTH CAROLINA

2017 SEP 25 AM 10:29

CHERYL GRAHAM
CLERK OF COURT
DORCHESTER COUNTY

BANK OF AMERICA, N.A.,

      Plaintiff(s),

Vs.

NELSON L BRUCE; ect. all

      Defendants(s)

Case NO. __16-CP-18-1678__

**AMENDED:**

Response and Countersuit, Jury Trial Demand,
Monetary Damages Demand, Libel, Slander,
and Constructive Fraud, Non-Limited Jurisdiction,
Injunction Demand, VIOLATION OF THE FAIR
DEBT COLLECTION PRACTICES ACT CLAIM,
Violation of Debt Demand, Violation of TILA

---

I.    **An Affidavit: "My Statement of claim**.....

1.    I Nelson L Bruce a natural man of the age of majority am the beneficial owner of The
Equitable Cestui Que Trust, and as such I claim to have firsthand knowledge of the
information contained herein, and or direct knowledge of the facts stated herein.

2.    A company has filed a lawsuit against me, and has failed to properly serve the lawsuit on
my person and/or my representative which is a violation of my due process rights and I
object to and ask that their claims be dismissed immediately with prejudice, as the opposing
party are students of law, learning individuals, familiar with the rules and procedures and
have failed to follow them knowingly, intentionally and deliberately.  (Please note that all of
my claims against the opposing party are said to be done knowingly and intentionally and
deliberately with wanton disregard to due process, my rights, and the law.)

3.    I however am not a student of law!

4.    I am not familiar with the rules of the court, however, I am familiar with my right to have the
rules suspended, and to have all of my presentments construed liberally, and I do herby
elect to exercise that right and request rules be suspended.

II.    **Lack of standing**

5.    BANK OF AMERICA, N.A. is unlawfully appearing on my credit report and they have failed
to serve me properly with a lawsuit.  BANK OF AMERICA, N.A. has a reputation of filing
thousands of collection lawsuits each year against consumers such as myself.  BANK OF
AMERICA, N.A. has the practice of hiring a local collection attorney to file their lawsuits,
which calls into question their ability to act as a debt collector of the state of South Carolina.

6. BANK OF AMERICA, N.A. will rely on witness testimony in a "business record Affidavit" when trying to prove their case against consumers such as myself. I herby categorically admit and/or deny the following in regards to the Plaintiffs allegations.

1. Answering paragraph ___1___, Defendant admits the allegations thereof, and alleges that:
**Plaintiff and their attorney(s) lacks standing to foreclose. They do not have subject matter jurisdiction. Neither are they the real parties in interest (*see motion to dismiss filed on April 3, 2017 and the attached documents with it, Exhibits A-D, Exhibit - E "Notice of Rescission," Supporting Letter to motion to dismiss*).**

2. Answering paragraphs ___2___ Defendant admits the allegations thereof.

3. Answering paragraph ___3___, Defendant denies the allegations thereof, and alleges that:
**Plaintiff has filed or produced no such evidence at the time of the initial filing nor at the entry of this filing proving they are the true holders in due course of the original instruments (Note(s)) baring the Defendants wet ink signature.**

4. Answering paragraph ___4___, Defendant admits to the allegations that:
**Plaintiff is participating in the Home Affordable Modification Program but is without sufficient knowledge or information to form a belief as to the truth of the allegations of the loan not being eligible for a modification based off of an administrative order from the supreme court 2009 and therefore denies them.**

5. Answering paragraph ___5___, Defendant admits the allegations thereof.

6. Answering paragraph ___6___, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and therefore denies them.

7. Answering paragraph ___7___, Defendant admits the allegations thereof, and alleges That:
**Plaintiff took advantage of Defendant because of his situation and persuaded him to sign a modification and a re-instated note based off the alleged fact that the mortgage was lawfully transferred over to the Defendant and the Plaintiff had legal ownership of the mortgage servicing rights and the original note baring his wet ink signature and acting as if they were the lender.**

8. Answering paragraph ___8___, Defendant admits the allegations thereof.

9. Answering paragraph ___9___, Defendant denies the allegations thereof, and alleges that:

**Plaintiff intentionally provided a fraudulent assignment of the mortgage to try to Foreclose on the Defendant around June 4, 2012 and to persuade the Defendant to sign a mortgage modification and create a new "Note" based on the allegations that they had standing and lawfully transferred ownership of the mortgage 2 years after the initial closing to have authority to modify the alleged loan. Also at the time of the first foreclosure proceeding done around June of 2012, the Plaintiff alleged that they were Foreclosing on behalf of their selves and had not produced any evidence into the court at the time of filing the lawsuit showing they were the true parties with equitable interest. Plaintiff is also stating that they allegedly purchased the actual loan but Defendant alleges that the Plaintiff only purchased the servicing rights in 2009 because the loan had already been securitized and the investors would be the only ones who could make a valid claim which would make the foreclosure proceeding commenced in June of 2012 under *Case No. 2012-CP-18-1396* a wrongful foreclosure action as well since they could not have standing as shown in (Exhibit – C) nor could they be the true parties at interest.**

10. Answering paragraph ___10___, Defendant denies the allegations thereof, and alleges that:

**The "Note" Evidences and secures the payment of money of which the Plaintiff has not provided verifiable proof that they are the holders in due course of, and in fact have sent Plaintiff 3-4 altered copy versions of the "Original Note(s)" stating it is a copy of the original and at the same time also state in their correspondence letter, the Plaintiff would have to retain the original which obligates the Defendant to make "any payments" on the alleged loan (see Exhibit - F) therefore the Plaintiff never validated and verified under firsthand knowledge signed under penalty of perjury as requested that they have or ever had in their possession the "Original Note(s)" baring the Defendants wet ink signature and have since July of 2015 avoided every request to provide and produce sufficient evidence that they hold the real "original note(s)" baring the Defendants wet Ink signature. These are the reasons the defendant Demands that the original note(s) be produced, not copies of copies.**

11. Answering paragraph ___11___, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and therefore denies them.

12. Answering paragraph ___12___, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and therefore denies them.

13. Answering paragraph ___13___ and ___14___, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and therefore denies them.

14. Answering paragraph ___15___, Defendant denies the allegations thereof, and alleges that:

    **Plaintiff lacks standing to foreclose see motion to dismiss filed on April 3, 2017 and the attached Exhibits A-D, see Supporting letter to motion to dismiss and Exhibit - E.**

15. Answering paragraph ___16 (A,B,C)___, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations, and therefore denies them.

16. Answering paragraph ___16 (D,E)___, Defendant admits the allegations thereof.

7. BANK OF AMERICA, N.A. intentionally refuses to recognize the validity of the defendant(s) "notice of rescission" dated November 7, 2016 which under *12 CFR 226.23 (h)(1) Special rules for foreclosures* gives the defendant a right of rescission in Foreclosure since the Plaintiff never provided the Defendant with the proper notices and disclosures stating he has the right to rescind/cancel the transaction nor have they supplied the defendant with the proper rescission forms as required under *TILA (Appendix H)*. According to *12 CFR 226.23(d)(2) Effects of rescission.* The security interest is void and BANK OF AMERICA, N.A. had 20 calendar days from receipt of rescission to return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest, which they have failed to do and continues to ignore the fact that the Defendant has exercised his right under TILA and have given notice of rescission to the Plaintiff under **U.S.P.S. Certified Mail No. 7016 1370 0002 2233 1855** and their previous Attorney under **Certified Mail No. 7016 1370 0002 2233 1862** dated November 7th, 2016 along with a Notary Certificate of Service as required to perfect this right. BANK OF AMERICA, N.A. interest is void as stated in *12 CFR 226.23 (d)(1)* When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge. **(See Exhibit – E Notice of Rescission and Opportunity to Cure)**

8. BANK OF AMERICA, N.A. is located at 4909 SAVARESE CIRCLE FL1-908-01-47, TAMPA, FL 33634; however, this company is simply a Shell Corporation/Subsidiary. In reality, BANK OF AMERICA, N.A. is just a simple Shell Corporation owned entirely by BANK OF AMERICA CORPORATION (I hereby enjoin this body, its board, and other representatives into this matter as co-conspirators and opposing parties) whose headquarters is located in 100 N Tryon St STE 170, Charlotte, NC 28202 (Toll Free: (980) 335-3561). BANK OF AMERICA CORPORATION is one of the largest banks in

the United States that purchases debt. In 2016 alone, the company net over $4 billion in profits.

9. According to some very deceiving correspondences from Carrington Mortgage Services, LLC whose has an address of 1600 South Douglass Road, Suites 110 & 200A Anaheim, CA 92806 a party I do not know and have never done business with is alleging they are the new current servicer and have been presented with a RESPA/Debt validation request for which they have also violated my rights to due process and refuses to respond properly to my presentments. In their correspondences to me, Carrington Mortgage Services, LLC do not know who the current investor/original altered note holder is and have been making up trusts, owners, addresses, and contact information since I now have multiple addresses, owners, numbers, and trusts for which the original altered note is allegedly held in less than a 30 day period for which no one is sending an acknowledgement letter besides Carrington Mortgage Services, LLC. Alleged owners stated are Wilmington Savings Fund Society, FSB as trustee of Stanwich Mortgage Loan Trust C., Stanwich MLNT 2017-1 Class A. (I hereby enjoin these bodies, its boards, and other representatives into this matter as co-conspirators and opposing parties).

10. I do not recognize the debt claim by BANK OF AMERICA, N.A., and say that they are attempting to collect on something for which they have no actual facts, evidence, and or accurate records to support their claim.

11. I have demanded that they validate the debt, and herby place my demand for validation of debt within and incorporated into this matter.

## III.    DEBT VALIDATION DEMAND

12. I have the right to demand the debt be not only verified but validated, supported by the original contract, I hereby make this demand in this matter at this present time for it is my claim and my contention that such records do not exist.

13. Since the opposing party's claim is based on nonfactual information, and they have made this matter of public record by filing a claim against me, and failing to properly serve me the documentation, such a claim was filed without proper notification and has thus caused me damage, documented as follows:

    a) By placing this derogatory, incriminating, inflammatory, and wholly inaccurate information on this public record my reputation has been impacted negatively.

    b) The state of South Carolina has laws against libel and slander, and I bring forth my claim for such and incorporate into this matter deliberately, and by reference.

    c) Since the debt has not been validated, and a validation of debt has been requested on several occasions (See exhibits A-B for reference), I hereby bring to this body's

attention that the opposing party with their accomplices have violated my due process rights as well as the fair debt collections practices act.

d) For the violation of the fair debt collections practices act which says that once a dispute has been initiated, that the party making the claim of debt must suspend all debt collection activities until the debt has been validated, which would include reporting such to the credit reporting bureaus, this was not done.

e) The opposing party was asked to cease any and all communication attempts via telephone, and ignored that request on more than 20 occasions.  The law provides for a penalty for each time a debt collector has violated the fair debt collections practices act communications clause, as well as their failure to provide the information required by law i.e. validation, and I bring forth my claim within the body of this matter.

14. I hereby claim that the opposing party does not have a chain of custody for the account, as the custodian of record is required to maintain, I have demanded this information in the past and they have failed to provide within a timely fashion, which precludes them from any further claims referencing the same matter.

15. It is my claim that the opposing party is barred by statute from continuing to make any further claims when they have intentionally failed to validate the debt after more than 2 years.

## IV.    GENERAL ALLEGATIONS

16. The BANK OF AMERICA, N.A. executed a foreclose action on plaintiff's property on (8-19-2016).

17. The Plaintiff is not the true party of interest therefore did not have nor do they currently have standing to bring a foreclosure action.

18. Plaintiff has no prior approval from the Secretary to proceed with foreclosure and no such approval statement is on record or filed in the court case therefore Plaintiff is in breach of the Mortgage/Deed of Trust.

19. The Plaintiff nor their Attorneys have subject matter jurisdiction neither are they the true parties of interest for which no affidavit has been filed validating and verifying under firsthand knowledge to any facts that they are the true holders in due course of the original note(s) or that this is a valid debt.

20. The Plaintiff failed and refuses to properly respond and/or rebut the Defendants Presentments (Affidavit, and RESPA/DEBT VALIDATION) for which they have defaulted on and therefore acquiescence by their silence.  (See. Exhibits A-B)

21. The Defendant has Mortgage/Foreclosure Insurance that protects the lender in the case of a default which is documented in the deed of trust that has been paid for since the closing

of the alleged loan. The Defendant neglects and refuses to apply for the insurance as instructed.  The requirements for the Mortgage/Foreclosure Insurance is for the alleged creditor/lender to have proof that there is a default and to provide valid verifiable documents and track record that would validate that they have an interest in the alleged mortgage which they do not and this is why they have not applied for the insurance.

22. There is no bona fide signature on the alleged altered promissory note(s).

23. The copy of the "ALTERED" promissory note(s) is a forgery.

24. The signatures on the altered alleged original note(s) and alleged mortgage assignment(s) have ROBO signatures.

25. The Plaintiff have no verifiable valid proof validating their purchase of this alleged loan from any previous alleged creditors/lenders nor receipts, bill of sales ect…which would validate a valid purchase and transfer of this alleged debt.

26. The alleged altered original promissory note(s) cannot be produced by Plaintiff with Defendant's name on it, said copy or copies purports to obligate defendant to pay a certain sum of money.

27. The Plaintiff bank and/or Original Lender (Countrywide Bank FSB) advertised they loan money.

28. Defendant applied for a loan of money.

29. Plaintiff and/or Original Lender (Countrywide Bank FSB) refused to loan Defendant legal tender or other depositors' money to fund the alleged bank loan cheque.

30. The Plaintiff bank and/or Original Lender misrepresented to the Defendant the elements of the alleged agreement.

31. The Plaintiff recorded the forged promissory note(s) as a loan from Defendant to the bank (Original Creditor Countrywide Bank FSB) for the first note and a loan from the Defendant to the Plaintiff for the second note.

32. The Plaintiff and/or Original Lender (Countrywide Bank FSB) used this loan to fund the alleged bank loan cheque, back to Defendant.

33. The Plaintiff and/or Original Lender (Countrywide Bank FSB) at no time loaned Defendant legal tender or other depositors' money in a certain amount or repay the unauthorized loan it recorded from Defendant to the bank.

34. Plaintiff and/or Original Lender created a contract, which was void, in that the lending officer did not have the power under the Bank Charter to loan, the Defendant credit; the contract was "ultra vires." (See Defendants Memorandum of Law)

35. Plaintiff is in violation of the usury laws in that the Plaintiff did charge interest on credit and not money. Defendant alleges that Plaintiff through their conduct have defrauded Defendant and based upon this fraud are in violation of Federal Banking Law 12 USC §24 (7) and subject to SC Code § 34-3-210 Plaintiff have irreparably damaged the Defendant by trying to depriving him of his property and inflicting serious mental and emotional damage to Defendant.

36. The Plaintiff and/or the Original Lender changed the cost and the risk of the alleged loan.

37. At all times the Plaintiff operated without Defendant's knowledge, permission, authorization, or agreement.

38. The Plaintiff and/or Original Lender bank refused to provide full disclosure of material facts of the alleged agreement, refusing to tell Defendant if the agreement was for Defendant to fund the alleged bank loan cheque or if the Plaintiff and/or Original Lender was to use the bank's legal tender or other "depositors" money to fund the bank loan cheque.

39. The Plaintiff and/or Original Lender refused to disclose whether the cheque was the consideration loaned for the alleged promissory note.

## V.    CONSPIRACY CLAIM:

40. As listed above the opposing parties have come together in a joint venture to deprive consumer such as myself of what is lawful due & right.

41. According to THE GOLD REPEAL ACT (otherwise known as the ACT OF JUNE 5 AND 6 1993), it is a violation of public policy for:

   a) Whereas the existing emergency has disclosed that provisions of obligations which purport to give the obligee a right to require payment… in an amount in money of the United States…every provision made with respect to any obligation which purports to give the obligee a right to require payments…in an amount in money of the United States… IS DECLARED TO BE AGAINST PUBLIC POLICY, and no such provisions shall be contained in or made with respect to any obligation hereafter incurred.

42. I bring forth my claim that the opposing party has violated public policy by making such a demand against and upon myself and other consumers, and therefore have no valid claim as their claim violates PUBLIC POLICY.

## VI.    MONETARY DAMAGE CLAIM

43. My claim is for monetary damages in the amount of Ten Million Dollars ($10,000,000).

44. Which Include Five Hundred Ten Thousand Dollars ($510,000) for punitive damages.

45. Six Million Four Hundred Ninety Thousand Dollars ($9,490,000) for compensatory and statutory damages.

46. Plus costs, attorney fees, and other provisions to include interest.

## VII.     I DO HEREBY DEMAND A JURY TRIAL

47. Because this matter was filed and no notice was properly served upon myself I do hereby file this my counterclaim and demand a jury trial, or trial by jury as it is more properly known.

48. As I brought to the court's attention, I am not a student of law.  Yet I have been attacked by a group of individuals in the form of this lawsuit and/or claim of debt.

49. Because this matter involves intricate laws such as:

   a) THE DEBT COLLECTIONS PRACTICES ACT
   b) THE FAIR CREDIT REPORTING ACT
   c) THE TRUTH IN LENDING ACT
   d) THE NONJUDICIAL FORECLOSURE ACT
   e) THE FEDERAL FAIR DEBT COLLECTION PROCEDURE ACT
   f) THE FEDERAL HOUSING ACT
   g) THE FEDERAL MORTGAGE SATISFACTION ACT
   h) THE GOLD REPEAL ACT
   i) THE STATE OF SOUTH CAROLINA CONSUMER PROTECTION ACT CODES AND LAWS
   j) BREACH OF CONTRACT

***It shall be noted that I incorporate each of these acts into this matter by reference, and I introduced this, my countersuit in the form of an affidavit as evidence into this matter, specifically and by reference.**

50. I Nelson L. Bruce am a competent nature person of the age of majority exorcising my due process rights and defending myself against such nonsensical, frivolous, meritless, and unsubstantiated claims by the opposing parties.

   a) I have a verified account with the Social Security Administration, and the Social Security Administration maintains an account on behalf of THE CESTUI QUE TRUST of which I am the **BENEFICIAL AND EQUITABLE OWNER.**

   b) The SSA form 445 is hereby granted you for the processing of payment of all fees associated with this matter with reference to my interest, as I am a party

duly authorized to grant permission with reference this form and my account, I wish to do so at this time.

50. As per statute I am indigent, unable to not only pay the filing fees, but also to afford a court admission attorney, and because the opposing party has revenue and resources greater than myself, and because it is my claim that they are not licensed to collect the debt in the state of South Carolina, and that even if they were licensed to collect the debt in the state of South Carolina they have violated the law, are doing so and are entitled to a dismissal of their claims with prejudice, only.

I so hereby attest, affirm, ascribe, and declare that I have firsthand knowledge of the information presented herein, that I am competent to make such claims, that I am apparently despite the lack of proper service, a party to this matter, and that the aforementioned is accurate under penalty of the state/Republic of South Carolina Constitution, and the United States of America Constitution on this September _22_, 2017, so help me God.

**"Without Prejudice"**

X _Nelson L. Bruce_    9-22-2017

Nelson L. Bruce, Propria Persona, Sui Juris
THE BENEFICIAL OWNER OF THE EQUITABLE CESTUI QUE TRUST
All Rights Explicitly Reserved and Retained U.C.C. 1-207/1-308, 1-103.6
c/o PMB 1605 Central Avenue, Ste 6 # 167
Summerville, South Carolina 29483

WHEREFORE, Defendant requests that the Court enter judgment in favor of Defendant and against Plaintiff as follows:

1.    For general and special damages in an amount that Defendant requests.
2.    For Defendant's reasonable costs incurred herein.
3.    That all fraudulent mortgage liens and/or assignments be remove off county records.
4.    For such other and further relief as the Court seems just in the premises.

Respectfully submitted,

**"Without Prejudice"**

X _Nelson L. Bruce_    9-22-2017

Nelson L. Bruce, Propria Persona, Sui Juris
THE BENEFICIAL OWNER OF THE EQUITABLE CESTUI QUE TRUST
All Rights Explicitly Reserved and Retained U.C.C. 1-207/1-308, 1-103.6
c/o PMB 1605 Central Avenue, Ste 6 # 167
Summerville, South Carolina 29483

**STATE OF South Carolina**

**COUNTY OF Dorchester**

On September 22 ,2017, before me    SHEMECA T. WIGFALL    Notary
Public, personally stood Nelson L. Bruce who proved to me on the basis of satisfactory
evidence to be the person whose name is subscribed to the within instrument and
acknowledged to me that he executed the same in his authorized capacity, and that by his
signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Answer and Counterclaim/Countersuit has been furnished to all parties herein by depositing the same in the United States mail under certified mail number 7017 1450 0001 9734 5905.

"Without Prejudice"

X _Nelson L. Bruce_    9-22-2017

Nelson L. Bruce, Propria Persona, Sui Juris
THE BENEFICIAL OWNER OF THE EQUITABLE CESTUI QUE TRUST
All Rights Explicitly Reserved and Retained U.C.C. 1-207/1-308, 1-103.6
c/o PMB 1605 Central Avenue, Ste 6 # 167
Summerville, South Carolina 29483

FILED - RECORDED
2017 SEP 25  AM 11: 27
CHERYL GRAHAM
CLERK OF COURT
DORCHESTER COUNTY

# EXHIBITS C-9

8/13/2020                                         Experian





Prepared for

**NELSON L. BRUCE**

Personal & Confidential

Date Generated Oct 4, 2018
Report Number 3427-0762-31



# About Dispute Results

Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

# Here are your results

## CARRINGTON MORTGAGE SE

Account · 700012XXXX

The information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated. Please review your report for the details.



Updated

You can contact CARRINGTON MORTGAGE SE at 1600 S DOUGLASS RD STE 200A, ANAHEIM, CA 92806 or (949) 517-7000

 **After your dispute:**

| Account Name | CARRINGTON MORTGAGE SERV | Balance | $209,723 |
|---|---|---|---|
| Account Number | 700012XXXX | Balance Updated | 08/31/2018 |
| Account Type | FHA Mortgage | Recent Payment | $0 |
| Responsibility | Individual | Monthly Payment | $1,081 |
| Date Opened | 03/30/2009 | Original Balance | $161,385 |
| Status | Foreclosure proceedings started. $50,083 | Highest Balance | $0 |
| | past due as of Aug 2018. | Terms | NA |
| Status Updated | 08/31/2018 | On Record Until | Jul 2022 |

**Payment History**

LEGEND    (180)  180 Days Past Due            (FS)  Foreclosure proceedings started

8/13/2020                                                             Experian

## 2018

| JAN | FEB | MAR | APR |
|---|---|---|---|
| 180 | 180 | 180 | 180 |

| MAY | JUN | JUL | AUG |
|---|---|---|---|
| 180 | 180 | 180 | FS |

| SEP | OCT | NOV | DEC |
|---|---|---|---|
| | | | |

## 2017

| JAN | FEB | MAR | APR |
|---|---|---|---|
| | | | |

| MAY | JUN | JUL | AUG |
|---|---|---|---|
| | | | 180 |

| SEP | OCT | NOV | DEC |
|---|---|---|---|
| 180 | 180 | 180 | 180 |

**Historical Information**

Purchased From                                    BANK OF AMERICA

**Comment**

Foreclosure proceedings started.

**Reinvestigation Information**

This item was updated from our processing of your dispute in Oct 2018.

**Balance History**

| JUL 2018 | $208,294 Balance | $1,081 Scheduled Payment | $0 Paid on 07/01/2015 |
|---|---|---|---|
| JUN 2018 | $204,112 Balance | $1,081 Scheduled Payment | $0 Paid on 07/01/2015 |
| MAY 2018 | $200,925 Balance | $1,081 Scheduled Payment | $0 Paid on 07/01/2015 |
| APR 2018 | $200,181 Balance | $1,081 Scheduled Payment | $0 Paid on 07/01/2015 |
| MAR 2018 | $199,437 Balance | $1,081 Scheduled Payment | $0 Paid on 07/01/2015 |
| FEB 2018 | $198,642 Balance | $1,081 Scheduled Payment | $0 Paid on 07/01/2015 |
| JAN 2018 | $197,896 Balance | $1,081 Scheduled Payment | $0 Paid on 07/01/2015 |
| DEC 2017 | $197,147 Balance | $1,081 Scheduled Payment | $0 Paid on 07/01/2015 |
| NOV 2017 | $196,389 Balance | $1,081 Scheduled Payment | $0 Paid on 07/01/2015 |

### Before your dispute:

| | | | |
|---|---|---|---|
| Account Name | CARRINGTON MORTGAGE SERV | Balance | $209,723 |
| Account Number | 700012XXXX | Balance Updated | 08/31/2018 |
| Account Type | FHA Mortgage | Recent Payment | $0 |
| Responsibility | Individual | Monthly Payment | $1,081 |
| Date Opened | 03/30/2009 | Original Balance | $161,385 |
| Status | Foreclosure proceedings started. $50,083 past due as of Aug 2018. | Highest Balance | $0 |
| | | Terms | 34 Years |
| Status Updated | 08/31/2018 | On Record Until | Jul 2022 |

**Payment History**

| LEGEND | 180 | 180 Days Past Due | FS | Foreclosure proceedings started |
|---|---|---|---|---|

## 2018

| JAN | FEB | MAR | APR |
|---|---|---|---|

## 2017

| JAN | FEB | MAR | APR |
|---|---|---|---|

8/13/2020                                      Experian

This information is reported to us by you, your creditors and/or other sources. Each source may report your information differently, which may result in variations of your name, address, Social Security number, etc. This is used for identification purposes only and does not factor into your Credit Score.



FILE FROZEN DUE TO FEDERAL LEGISLATION.

# Accounts

Includes credit cards, retail credit cards, real estate loans and installment loans. This information is reported to the credit bureaus from your creditors.

### BK OF AMER                                    Potentially 
                                                  Negative

8/13/2020

**Experian**

| Account Name | BK OF AMER |
| Account Number | 20298XXXX |
| Account Type | FHA Mortgage |
| Responsibility | Individual |
| Date Opened | 03/30/2009 |
| Status | Transferred,closed. |
| Status Updated | 05/01/2017 |

| Balance | - |
| Balance Updated | - |
| Recent Payment | - |
| Monthly Payment | $0 |
| Original Balance | $161,385 |
| Highest Balance | $0 |
| Terms | NA |
| Mortgage Identification Number | 100133700035646523 |

**Payment History**

LEGEND    (OK) Current on payments    (30) 30 Days Past Due    (180) 180 Days Past Due

(ND) No data for this time period    (CLS) Closed

## 2017
| JAN | FEB | MAR | APR |
| ND | ND | ND | CLS |
| MAY | JUN | JUL | AUG |
| CLS | | | |
| SEP | OCT | NOV | DEC |
| | | | |

## 2016
| JAN | FEB | MAR | APR |
| ND | ND | ND | 180 |
| MAY | JUN | JUL | AUG |
| ND | ND | ND | ND |
| SEP | OCT | NOV | DEC |
| ND | ND | ND | 180 |

## 2015
| JAN | FEB | MAR | APR |
| OK | OK | OK | OK |
| MAY | JUN | JUL | AUG |
| OK | OK | OK | 30 |
| SEP | OCT | NOV | DEC |
| OK | ND | OK | ND |

## 2014
| JAN | FEB | MAR | APR |
| OK | OK | OK | OK |
| MAY | JUN | JUL | AUG |
| OK | OK | OK | OK |
| SEP | OCT | NOV | DEC |
| OK | OK | OK | OK |

## 2013
| JAN | FEB | MAR | APR |
| ND | OK | OK | OK |
| MAY | JUN | JUL | AUG |
| OK | OK | OK | OK |
| SEP | OCT | NOV | DEC |
| OK | OK | OK | OK |

## 2012
| JAN | FEB | MAR | APR |
| ND | ND | ND | ND |
| MAY | JUN | JUL | AUG |
| ND | ND | ND | ND |
| SEP | OCT | NOV | DEC |
| ND | ND | ND | ND |

## 2011
| JAN | FEB | MAR | APR |
| ND | ND | ND | ND |
| MAY | JUN | JUL | AUG |
| ND | ND | ND | ND |
| SEP | OCT | NOV | DEC |
| ND | ND | ND | ND |

## 2010
| JAN | FEB | MAR | APR |
| | | | |
| MAY | JUN | JUL | AUG |
| | OK | OK | OK |
| SEP | OCT | NOV | DEC |
| ND | ND | ND | ND |

**Contact Info**

| Phone Number | (800) 669-6607 |
| Address | PO BOX 31785 TAMPA, FL 33631 |

**Balance History**

| JAN 2017 | $170,312 | $1,081 | $0 |
| | Balance | Scheduled Payment | Paid on 07/06/2015 |

**Comment**

Account transferred to another lender.

**Your Statement**

I HAVE NO KNOWLEDGE OF THIS ACCOUNT.

8/13/2020                                                    Experian

**Reinvestigation Information**

This item remained unchanged from our processing of your dispute in Sep 2018.

## CARRINGTON MORTGAGE SERV

Potentially Negative 

| | | | |
|---|---|---|---|
| Account Name | CARRINGTON MORTGAGE SERV | Balance | $209,723 |
| Account Number | 700012XXXX | Balance Updated | 08/31/2018 |
| Account Type | FHA Mortgage | Recent Payment | $0 |
| Responsibility | Individual | Monthly Payment | $1,081 |
| Date Opened | 03/30/2009 | Original Balance | $161,385 |
| Status | Foreclosure proceedings started. $50,083 past due as of Aug 2018. | Highest Balance | $0 |
| | | Terms | NA |
| | | On Record Until | Jul 2022 |
| Status Updated | 08/31/2018 | | |

**Payment History**

**LEGEND**  (180)  180 Days Past Due          (FS)  Foreclosure proceedings started

### 2018

| JAN | FEB | MAR | APR |
|---|---|---|---|
| (180) | (180) | (180) | (180) |
| MAY | JUN | JUL | AUG |
| (180) | (180) | (180) | (FS) |
| SEP | OCT | NOV | DEC |
| ( ) | ( ) | ( ) | ( ) |

### 2017

| JAN | FEB | MAR | APR |
|---|---|---|---|
| ( ) | ( ) | ( ) | ( ) |
| MAY | JUN | JUL | AUG |
| ( ) | ( ) | ( ) | (180) |
| SEP | OCT | NOV | DEC |
| (180) | (180) | (180) | (180) |

**Historical Information**

| | |
|---|---|
| Purchased From | BANK OF AMERICA |

**Contact Info**

| | |
|---|---|
| Phone Number | (949) 517-7000 |
| Address | 1600 S DOUGLASS RD STE 200A ANAHEIM, CA 92806 |

**Comment**

Foreclosure proceedings started.

**Balance History**

| | Balance | Scheduled Payment | |
|---|---|---|---|
| JUL 2018 | $208,294 | $1,081 | $0 Paid on 07/01/2015 |
| JUN 2018 | $204,112 | $1,081 | $0 Paid on 07/01/2015 |
| MAY 2018 | $200,925 | $1,081 | $0 Paid on 07/01/2015 |
| APR 2018 | $200,181 | $1,081 | $0 Paid on 07/01/2015 |
| MAR 2018 | $199,437 | $1,081 | $0 Paid on 07/01/2015 |
| FEB 2018 | $198,642 | $1,081 | $0 Paid on 07/01/2015 |
| JAN 2018 | $197,896 | $1,081 | $0 |