IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Nelson L. Bruce, | ) | C/A No. 2:19-03456-BHH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Report and Recommendation |
| | ) | |
| Bank of America, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

This case, filed by the Plaintiff pro se, was filed against Defendant, Bank of America, N.A. ("Defendant" or "BANA") for a purported violation of the Fair Credit Reporting Act ("FCRA"). ECF No. 1. This matter is before the court on Defendant's Motion for Summary Judgment filed on April 30, 2021. ECF No. 83. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on May 3, 2021, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 84. Plaintiff filed a Response in Opposition to Defendant's Motion on June 4, 2021, ECF No. 87, to which Defendant replied on June 8, 2021, ECF No. 88. Plaintiff filed a Sur Reply on June 23, 2021. *See* ECF No. 97. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because the Motion is dispositive, a Report and Recommendation ("R&R") is entered for the court's review.[2]

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

[2] On June 17, 2021, Plaintiff filed a Motion to Vacate the court order filed on October 29, 2020. ECF No. 96. Additionally, BANA filed a Motion to Strike Plaintiff's Sur reply on June 30, 2021. ECF No. 99. Finally, Plaintiff filed a Motion to Vacate the District Court's Order from November 17, 2020, ruling on the undersigned's October 22, 2020 R&R. *See* ECF No. 103. The undersigned recommends denying Plaintiff's Motions, ECF Nos. 96, 103, as untimely. Further, the undersigned

I.  **Background**

Plaintiff has filed several actions with this court related to different parties' alleged erroneous reporting of his credit scores. Here, Plaintiff sues BANA for "violations of the [FCRA] 15 USC § 1681 (b) as defined in section 604." ECF No. 1. Plaintiff represents that he is challenging Defendant's "unauthorized and unlawful credit inquiry." *Id.* at ¶ 2. Plaintiff indicates that on or before March 13, 2017, Defendant sold and transferred Plaintiff's mortgage account to a third-party debt buyer/debt collector and that at the time the account was in default. *Id.* at ¶ 23. Plaintiff represents that on January 4, 2018, he pulled his Transunion Credit Report and discovered that on May 29, September 16, and October 9 of 2017, Defendant submitted an "unauthorized and unlawful credit inquiry in violation of FCRA by submitting an unauthorized credit inquiry to Transunion after they have sold and transferred the Plaintiff's mortgage account to a third party debt buyer/debt collector." *Id.* at ¶ 24. Plaintiff maintains that these inquiries for his consumer report information, without his consent, fall outside of the scope of any permissible use or access included in 15 U.S.C. § 1681b. *Id.* at ¶ 28. Plaintiff alleges that his credit score was lowered as a result of Defendant's illegal actions. *Id.* at ¶ 30.

> Plaintiff alleges:
>
> Since the Defendant was a main party who conducted, initiated, sold, and transferred [his] mortgage account to a third party debt buyer/debt collector, they were well aware that the debt was no longer owed to them, that they did not have permissible purpose to review Plaintiff's Transunion credit report because the account relationship was terminated due to the defendants selling and or transferring their rights under plaintiffs mortgage account to the third party, therefore the Defendant's actions were willful.

---

denies Defendant BANA's Motion, ECF No. 99, as moot based on the recommendations contained herein.

*Id.* at ¶ 31. Plaintiff seeks actual, statutory, and punitive damages for Defendant's alleged FCRA violations as well as reasonable fees, costs, and a jury trial. *Id.* at ¶¶ 35-46. Plaintiff alleges the FCRA violations occurred on May 29, 2017; September 16, 2017; and October 9, 2017, after BANA sold or transferred his mortgage loan account to a third party. *Id.* at ¶ 24.

## II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

## III.    Analysis

BANA argues it is "entitled to summary judgment for all alleged soft credit account inquiries appearing on Mr. Bruce's consumer report because the undisputed evidence for this case shows that BANA obtained Mr. Bruce's consumer report for the permissible purpose of advancing collection activities and completing account reviews for two loan transactions that involved Mr. Bruce." ECF No. 83-1 at 2. BANA argues that Plaintiff's claim fails because the FCRA expressly authorizes it to secure Plaintiff's consumer reports. *Id.* at 6. It maintains that undisputed evidence demonstrates that BANA complied with the FCRA because it secured Plaintiff's consumer report for the permissible purpose of reviewing and collecting on loan accounts involving Plaintiff. *Id.*

In response, Plaintiff maintains whether BANA had a permissible purpose to obtain his credit reports after they had willfully closed his accounts is a jury question. ECF No. 87 at 2. Further, he argues that a jury should decide whether BANA intended to use the information obtained with a credit transaction or a legitimate business purpose. *Id.* at 2-3. Plaintiff contends that whether BANA gave up all their rights in Plaintiff's alleged mortgage loan, including servicing rights, and whether BANA acted willfully under the FCRA, is a jury question. *Id.* at 3. Plaintiff represents that the evidence presented by BANA does not show BANA had any permissible purpose to obtain his credit reports after it voluntarily sold and transferred all their alleged rights in the alleged mortgage to another party. *Id.* at 3-4.

In Reply, BANA argues Plaintiff's (untimely) response fails to preclude entry of summary judgment in its favor. ECF No. 88 at 1. Specifically, BANA maintains: "As the servicer for Mr. Bruce's mortgage loan, BANA had reason to believe that it had a permissible purpose to secure Mr. Bruce's consumer report after transfer of Mr. Bruce's mortgage loan to a third party." *Id.* BANA represents that under the FCRA it is only required to demonstrate it had "reason to believe" that it had a permissible purpose to secure Plaintiff's credit report. *Id.* Additionally, it argues:

4

"[U]nder the FCRA, any purported transfer of Mr. Bruce's mortgage loan to a third party in March 2017 did not preclude BANA from having a permissible purpose to secure Mr. Bruce's consumer report." *Id.* at 2. Further, BANA argues after servicing of Mr. Bruce's mortgage loan transferred to a third party, BANA still had a permissible purpose to secure Mr. Bruce's consumer report because BANA was required to respond to credit reporting disputes that Mr. Bruce raised after the service transfer. *Id.* at 3. Finally, BANA argues that Plaintiff's alleged recent discovery of the commercial credit account does not preclude entry of summary judgment in favor of BANA and no further discovery concerning the account is required. *Id.* at 5.

In a Sur Reply, Plaintiff maintains "there are genuine issues of material facts evidenced in this action and on the record" that are in dispute that preclude summary judgment. ECF No. 97 at 1. He argues he has a right to a jury trial and does not waive that right. *Id.* He argues that for there to be a permissible purpose under the FCRA, the account must be an existing account. *Id.* at 2. He represents that credit bureaus require a "data furnisher" like BANA to report an existing account with a code referencing the status of an account. *Id.* Plaintiff argues that after May 2, 2017, BANA no longer had a permissible purpose to pull or review his credit report. *Id.* at 3.

Congress enacted the FCRA to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, insurance, and other information in a manner that is fair and equitable to the consumer. . . ." 15 U.S.C. § 1681(b). Under the FCRA:

> A person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681(e) of this title by the prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f). The plaintiff alleges that the defendant made a unauthorized and unlawful inquiries (Comp. ¶ 2) and thus appears to allege a violation of 15 U.S.C. § 1681b(f). The FCRA allows access to a consumer's credit report only for specified permissible purposes. *Cappetta v. GS Servs. Ltd. P'ship*, 654 F. Supp. 2d 453, 457 (E.D. Va. 2009). To state a claim for acquisition of a credit report in violation of the FCRA, "a plaintiff must allege facts showing each of the following: (i) there was a consumer report; (ii) the defendant used or obtained it, (iii) the defendant did so without a permissible statutory purpose, and (iv) the defendant acted with the specified culpable mental state." *King v. Equable Ascent Fin.*, LLC, 1:12–CV–443, 2013 WL 2474377, at *2 (M.D.N.C. June 10, 2013) (quoting *Benzing v. Tharrington–Smith, LLP*, 5:10–CV–533–F, 2012 WL 169946, at *3 (E.D.N.C. Jan.19, 2012)).  When a defendant acted willfully in violating the statute's requirements by obtaining a consumer report under false pretenses or knowingly without a permissible purpose, the FCRA permits a plaintiff to recover actual damages or statutory damages of $1,000, whichever is greater; punitive damages; and costs of the action. *Id.* § 1681n(a). When a defendant acted negligently, a plaintiff may recover actual damages and costs of the action. *Id.* at § 1681o(a).

The FCRA details the purposes for which a consumer credit report is authorized to be furnished, including responding to a subpoena or in accordance with written instructions of the consumer. *See* 15 U.S.C. § 1681b(a)(1)-(2). The applicable subsection at issue here provides that any consumer reporting agency may furnish a consumer report under the following circumstances:

> (3) To a person which it has reason to believe--
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
> (B) intends to use the information for employment purposes; or
> (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or
> (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or
> (F) otherwise has a legitimate business need for the information--
> (i) in connection with a business transaction that is initiated by the consumer; or
> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.
> (G) executive departments and agencies in connection with the issuance of government-sponsored individually-billed travel charge cards.

15 U.S.C. § 1681b(a)(3). Here, BANA indicates that subsections (A) and (F) apply to their accessing Plaintiff's credit report.

In support of its argument, BANA presents the following undisputed facts to the court concerning Plaintiff's mortgage acquisition history. On February 12, 2009, Plaintiff applied for a purchase money mortgage loan to purchase property at 144 Pavilion Street, Summerville, SC 29483-8444. ECF No. 83-2 at ¶ 7; pp. 3-6. After being approved for the loan, Plaintiff originated a mortgage loan (BANA account no. xxxxx5786) with Countrywide Bank, FSB by signing a note and mortgage on March 30, 2009. *Id.* at pp. 15-26. In connection with the mortgage loan transaction, on March 31, 2009, Plaintiff also signed an amended note. *Id.* at pp. 27-31. Plaintiff was advised that on July 1, 2011, the servicing of his home loan was transferred to BANA. *Id.* at 32. On September 2, 2011, the mortgage was assigned to BANA. *Id.* at 37.

On August 19, 2016, BANA filed a foreclosure action against Plaintiff with the Court of Common Pleas for Dorchester County, South Carolina under Case No. 2016-CP-18-01678 ("Foreclosure Action") after Plaintiff defaulted on paying the monthly payments required by the mortgage loan. *See* https://publicindex.sccourts.org/Dorchester/PublicIndex/PISearch.aspx (last visited September 20, 2021). In response to the BANA's foreclosure complaint, Plaintiff filed and

served an answer and counterclaims. In his counterclaims, Plaintiff alleged an FCRA claim against BANA. ECF No. 83-3. During the course of the foreclosure action, BANA transferred the servicing for Plaintiff's mortgage loan to Carrington Mortgage Services, LLC on May 2, 2017. ECF No. 83-2 at 38-41. On March 23, 2018, the state court entered an order substituting Wilmington for BANA as the foreclosing plaintiff in the Foreclosure because BANA assigned Mr. Bruce's mortgage to Wilmington Savings Fund Society, FSB as Trustee of Stanwich Mortgage Loan Trust C ("Wilmington"). *Id.* at pp. 42-44; ECF No. 83-4. BANA represents that its records reflect that it requested Plaintiff's consumer report from TransUnion to review his mortgage loan account on March 24, 2017; March 27, 2017; April 14, 2017; May 15, 2017; May 20, 2017; and May 29, 2017. ECF No. 83-1 at 3 (citing ECF No. 83-5).

In support of its argument, BANA presents the following undisputed facts to the court concerning Plaintiff's Commercial Credit Account Transaction history. BANA's records reflect that Plaintiff originated a commercial credit account (BANA account no. xxxx xxxx xxxx 8269) on July 31, 2015 in the name of his small business, Capital Return Investments, LLC. ECF No. 83-6 at ¶ 7. Plaintiff initiated and opened the commercial credit account by submitting an online commercial credit application to BANA. *Id.* at 3-4. To provide access to the funds available through the commercial credit account, BANA issued and assigned a credit card (Credit Card No. xxxx xxxx xxxx 4136) to Plaintiff. *See id.* at 5-17. Under the section of the commercial credit account for "liability," the following language indicated:

> NOTICE TO INDIVIDUALS LIABLE ON THE ACCOUNT
> Federal law requires us to provide the following information: We may report information about this account to credit bureaus. Late payments, missed payments, or other defaults on this account ay be reflected in your credit report.
>
> Company and Guarantor. As acknowledged and agreed to in the written, electronic or verbal application, Company and Guarantor are jointly and serverally liable for

> repayment of all obligations at any time outstanding under this Agreement, or any extension, renewal or modification hereof, regardless of who received the benefit of the Account or to whom credit was advanced under the Account.
>
> Guarantor(s). Each business owner, authorized officer or other individual who signed, submitted or otherwise authenticated an application for a Card…, or an application for another credit product converted to an Account ("Guarantor(s)") jointly, separately, and unconditionally agrees to pay us all obligations, at any time outstanding under this Agreement, or any extension, renewal or modification thereof.

*Id.* at p. 11.

BANA represents that by Plaintiff's charging various purchases to the commercial credit account by using the credit card BANA issued him, he agreed to the terms of the credit card agreement. ECF No. 83-1 at 4 (citing ECF No. 83-6 at 11; 18-145). Further, BANA argues that that by his agreeing to the terms of the credit card agreement for the commercial credit account, Plaintiff also authorized BANA to "obtain credit reports and provide credit information to others regarding each Guarantor." *Id.* (citing ECF No. 83-6 at 11). Accordingly, BANA represents that Plaintiff authorized it to secure his consumer reports for matters related to the commercial credit account and its related credit card. *Id.* BANA indicates that its records reflect that it requested Plaintiff's consumer report from TransUnion on March 24, 2017; March 27, 2017; April 14, 2017; May 15, 2017; May 20, 2017; May 29, 2017; June 16, 2017; June 29, 2017; August 16, 2017; September 16, 2017; and October 9, 2017 to review and aid in collection of charges made to the commercial credit account. *Id.* at 5 (citing ECF No. 83-5).

Here, BANA argues that it had a permissible purpose for accessing Plaintiff's credit report. ECF No. 83-1 at 6-10. Specifically, BANA argues the undisputed facts, as demonstrated in the timeline above, show it complied with the FCRA by securing Plaintiff's consumer reports for the permissible purposes of reviewing and pursuing collection of loans Plaintiff originated and

initiated. *Id.* at 7. BANA acknowledges that it transferred service rights to Plaintiff's mortgage loan to a third party by May 17, 2017. *Id.* at 9. However, it argues:

> BANA still possessed a permissible purpose to obtain [Plaintiff's] consumer report after transfer of the mortgage servicing rights because [Plaintiff] initiated the mortgage loan transaction that BANA was reviewing and the mortgage loan account remained subject to collection. Additionally, the commercial credit account that [Plaintiff] opened provided BANA with additional permissible purposes to secure [Plaintiff's] consumer report under the FCRA.

*Id.*

The undersigned finds that both subsections (A) and (F) could apply to BANA's requests for Plaintiff's credit report. Under the undisputed facts, there was a business relationship between the parties, and Plaintiff does not dispute entering into a business relationship with BANA. Further, Plaintiff does not dispute that he owed a debt to BANA at the time his credit reports were pulled. Pursuant to 15 U.S.C. § 1681b(a)(3)(A), Plaintiff's credit report may be furnished to BANA if it "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer. . . ." *Korotki v. Thomas, Ronald & Cooper, P.A.*, 131 F.3d 135 (table), 1997 WL 753322 (4th Cir. Dec. 5, 1997) (per curiam) (noting that "seeking to collect an account owed by the consumer, § 1681(b)(3)(A), [is] likewise a permissible purpose"); *Harris v. NCO Fin. Sys.*, No. CIV.A. RDB-13-0259, 2013 WL 6858852, at *3 (D. Md. Dec. 23, 2013) ("Pursuant to the FCRA, a credit reporting agency is authorized to release a credit report to a person who 'intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer.'"). Further, subsection (F) of the same statute provides that a permissible use is one where there is a legitimate business need

for the information "(i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account."

The undersigned finds that BANA has demonstrated it had a permissible purpose in its requests for Plaintiff's credit reports. *Glanton v. DirecTV, LLC*, 172 F. Supp. 3d 890, 895 (D.S.C. 2016) (referencing *Daniel v. Bluestem Brands, Inc.*, No. 13–11714, 2014 WL 81763, at *4 (E.D. Mich. Jan. 9, 2014) ("A showing of a permissible purpose is a complete defense."). Courts have concluded that "the burden on users is similar," stating, "so long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA." *Glanton*, 172 F. Supp. 3d at 896. Taking Plaintiff's allegations as true and drawing reasonable inferences in his favor, the undersigned finds BANA had grounds to reasonably believe it was acquiring Plaintiff's credit report for a permissible purpose.

Though Plaintiff argues that whether a permissible use occurred is a question for the jury, the court finds it is a legal question. *See e.g.*, *Korotki v. Att'y Servs. Corp. Inc.*, 931 F. Supp. 1269, 1279 (D. Md. 1996), *aff'd sub nom. Korotki v. Thomas, Ronald & Cooper, P.A.*, 131 F.3d 135 (4th Cir. 1997) (finding plaintiff failed to meet burden as a matter of law at summary judgment stage); *Smith v. First National Bank of Atlanta,* 837 F.2d 1575, 1580 (11th Cir. 1988) (summary judgment in favor of defendant appropriate in privacy claim arising from same facts as FCRA claim because plaintiff produced no evidence that defendant acted in bad faith) (decision of district court included as an appendix to 11th Circuit's opinion); *Zeller v. Samia,* 758 F.Supp. 775, 782 (D. Mass. 1991) (where plaintiff who introduced no evidence indicating that defendant's use of consumer credit report was for any other reason than in connection with a business transaction with plaintiff did not survive summary judgment). Furthermore, Plaintiff cannot get to the jury simply because he

hopes that "the jury will disbelieve the evidence that the summary judgment movant has adduced." *Wilson v. Clancy,* 747 F.Supp. 1154, 1158 (D. Md. 1990); *see also DF Activities Corp. v. Brown,* 851 F.2d 920, 922 (7th Cir. 1988) ("A plaintiff cannot withstand summary judgment by arguing that although in pretrial discovery he has gathered no evidence of the defendant's liability, his luck may improve at trial."). Based on the undersigned's finding that BANA requested Plaintiff's credit reports for a permissible purpose under the FCRA, BANA is entitled to summary judgment.

### IV.   Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 83, ***be granted and this case be dismissed***. Additionally, as discussed above, it is recommended that Plaintiff's Motions to Vacate Orders, ECF Nos. 96 and 103, be denied as untimely, and Defendant's Motion to Strike, ECF No. 99, be denied as moot.

**IT IS SO RECOMMENDED.**

September 23, 2021                                             Kaymani D. West
Florence, South Carolina                                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**